**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JAMES H. PICKETT, JR.,        )
                                   )    No. 1:07cv1431 (PLF)
        Plaintiff,        )
                                   )
     v.                        )
                                   )
JOHN E. POTTER, Postmaster General  )
United States Postal Service,        )
                                 )
        Defendant.      )
                                 )

RECEIVED
DEC 1 1 2007
NANCY MAYER WHITTINGTON. CLERK
U.S. DISTRICT COURT

<u>PLAINTIFF'S MOTION TO QUASH AND/OR DENY DEFENDANT'S MOTION FOR AN ENLARGEMENT</u>

<u>OF TIME PURSUANT TO FED. R.CIV.P.6(b)(2) TO FILE A RESPONSE</u>

    Comes now James H. Pickett, Jr.("Plaintiff") to respectfully plead with the Court and/or Most Honorable Judge Paul L. Friedman to grant Plaintiff's motion to quash and/or deny John E. Potter, United States Postmaster General ("Defendant's") motion for an enlargement of time pursuant to Fed. R. Civ. P. 6(b)(2) to file a response. Plaintiff, James H. Pickett, Jr., filed this twelve (12) page complaint on or about August 7, 2007, citing violations of the "CIVIL RIGHTS ACT OF 1991", and perfected service on August 9, 2007. Accordingly, an answer or other response was due on or before October 9, 2007. Defendant and/or Defendant's Counsel knowingly and intentionally failed to answer in a timely manner, ignoring the rule of Law. Plaintiff feels that Defendant's untimely response was done as a stall tactic to buy time for discovery and also in hopes that Plaintiff would not be able to perfect service, etc.. Plaintiff also would like to inform the Court that as of November 9, 2007, that the "Reagan National Airport Mail Facility" was completely closed down and all employees were reassigned to "Curseen - Morris Processing And Distributing Center" at 900 Brentwood Road, N. E. - Washington, D. C.  20066. This now closed "Postal Facility" would be an advantage to the Defendant in that it would make requests for information near impossible to honor, etc.. (Please let the record show that "Reagan National Airport

Mail Facility" located at : #1 W. Post Office Road - Washington, D. C. 20001-9706, no

longer exist, etc... as of November 9, 2007.)(Also please note two attached documents

showing the above referenced "Reagan" mail facility address.)

The Plaintiff further prays that Defendant, John E. Potter's above referenced motion

is not granted because Defendant and/or Defendant's counsel failure to file an answer

or other response was intentional and due to in excusable neglect, etc.. In support of

Plaintiff's Motion Plaintiff states as follows:


· 1.    The undersigned Attorney admits that a copy of the Plaintiff's complaint

(1:07 cv 1431, PLF) in this matter was recieved from one of the United States Postal

Service numerous "Agency" Counsels before he thought that Plaintiff had perfected

service. Several weeks passed and Defendant's undersigned Attorney still failed to

file an answer or other response.

2.    The undersigned Attorney further writes that quote, " Meanwhile, a few days

after the undersigned recieved the complaint from the Agency Counsel, the undersigned

recieved a copy of the complaint that had been served upon the United States Attorney

on August 9, 2007, but was under the mistaken impression that this was another copy

from Agency Counsel, and continued to monitor PACER." Unquote. Defendant and/or

Defendant's undersigned Counsel, with all its' vast resources ( between the $73 BILLION

DOLLARS  and probably near a TRILLION in its' 37,000 Post Offices Nationwide) could have

easily made a few phone calls to find out if the Plaintiff, James H. Pickett, Jr.,

had perfected service. "It would seem that you don't need a College Degree to do

a"common-sense thing" ".

3.    The Plaintiff feels that the Undersigned Attorney in this matter and/or

the Defendant, John E. Potter, United States Postmaster General, has more than enough

resources, Attorneys, and whatever else they need at all times and the excuse that

the undersigned Attorney uses about " a two-week mandatory training at the National '

Advocacy Center in Columbia, South Carolina", seem so irrelevant when you have phones

and computers at almost everywhere, etc.."If the undersigned really was watching or had

someone else checking to see if the Plaintiff had perfected service, then it would not

have taken some fifty days past the October 9, 2007 date to file an answer or other

response. The Plaintiff prays that the Court and/or Most Honorable Judge Paul L.

Friedman will agree, etc..

    4.    The Defendant and/ or  Defendant's Counsel asks the Court and/or Most

Honorable Judge Paul L. Friedman to grant the above referenced Motion and "Simultaneous-

ly herewith," also file a "Motion To Dismiss the Complaint", and argues that Plaintiff's

claims are barred by res judicata and failure to file in the proper venue. Plaintiff,

James H. Pickett, Jr., argues that the Defendant and/or Defendant's Counsel are

in error because the Plaintiff's claims as referenced in the above referenced case

number 1:07cv1431 (PLF) and attached herein Complaint filed on August 7, 2007 under the

"CIVIL RIGHTS ACT OF 1991" consisting of twelve (12) pages, are not barred by res

judicata and are filed in the proper venue. Plaintiff further argues in support

of proof that the address for "Reagan National Mail Facility" was: #1 W. Post Office

Road - Washington, D. C. 20001-9706, until it closed down completely on November 9,

2007.(Please see attached two pages showing documents with the above referenced ad-

dress.) Plaintiff, James H. Pickett, Jr. respectfully requests that the Court and/or

Most Honorable Judge Paul L. Friedman not permit the intentional late filing of the

Defendant's motions filed on or about November 29, 2007. Such action will not only

be a "travesty of justice" and not contribute to a just resolution of this matter,

but Plaintiff will suffer "much" prejudice on account of the delay, etc..

    5.    Defendant's claims that Pursuant to LCvR7(m), that the undersigned attempted

to contact Plaintiff by calling the telephone number on the Plaintiff's most

recent pleading filed in the Court. Dated: November 29, 2007. Plaintiff has been on

a continuous "standby", and even calling the Court Clerk's office on numerous occasions

to inquire about the above referenced case, I believe the Clerk I talked with was Ms.

Davis (202) 354-3153. (For the record, the Plaintiff's phone numbers are (301) 505-

5892 and (301) 466-8993.)

6.    Plaintiff further cites the entire "Civil Rights Act Of 1991" as a further arguement and/or cases referenced within. (Please note attatched copy of the "Civil Rights Act Of 1991".)

The Plaintiff hereby affirms that all the infomation is true to the best of my knowledge.

Respectfully Submitted,

James H. Pickett, Jr. - Pro Se

5302 Broadwater Court

Temple Hills, Maryland  20748

(301) 466-8993

(301) 505- 5892

ORDER

    This matter comes before the Court on the Plaintiff's Motion To Quash And/Or Deny Defendant's Motion For An Enlargement Of Time Pursuant To FED. R. CIV. P. 6(b)(2) To File A Response. After considering the Plaintiff's pleadings, the supporting documentation, the record herein, and applicable law, it is this___ · ___ day of_____, 2007, hereby ORDERED, the Plaintiff's motion is hereby_____, and it is FURTHER ORDERED, that the Plaintiff's Case # 1:07 cv 1431,____set for a JURY Trial.

MOST HONORABLE JUDGE PAUL L. FRIEDMAN

## CERTIFICATE OF SERVICE

I hereby that on this 11th day of December, 2007, that a copy of the foregoing Plaintiff's Motion To Quash And/Or Deny Defendant's Motion For An Enlargement Of Time Pursuant To Fed. R. CIV.P.6(b)(2) To File A Response and served upon the parties listed below by first class mail, postage prepaid.

Michael Mukasey
Attornry General Of The United States
950 Pennsylvania Avenue, N. W.
Room 4400
Washington, D. C. 20530-0001

Jeffrey A. Taylor- United States Attorney
Rudolph Contreras - Assistant United States Attorney
Kenneth Adebonojo _ Assistant United States Attorney
555 Forth Street, N. W.
Washington, D. C.  20530

John E. Potter
Postmaster General Of The United States
U. S. Postal Servive Headquarters
475 L'Enfant Plaza, S. W.
Washington, D. C.  20260

Respectfully Submitted,

James H. Pickett, Jr. - Pro Se
5302 Broadwater Court
Temple Hills, Maryland  20748
(301) 466-8993
(301) 505- 5892

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

*PICKETT*

JAMES H. ~~PIAKETT~~, JR.
5302 BROADWATER COURT
TEMPLE HILLS, MARYLAND    20748
(30]) 466-8993
      PLAINTIFF

      VS

JOHN E. POTTER,
Postmaster General, U. S. Postal Service
475 L' ENFANT PLAZA, S. W.
WASHINGTON, D. C. 20260

Case: 1:07-cv-01431
Assigned To : Friedman, Paul L.
Assign. Date : 8/7/2007
Description: Employ. Discrim.

### COMPLAINT

Plaintiff, James H. Pickett, Jr., states that on October 20, 2004, he was

discriminated against in violation of the "Civil Rights Act Of 1991" because

of his race, retaliation and / or reprisal.

Plaintiff, also states that on October 20, 2004, Supervisor Monique Corbett-

Richardson intentionally, knowingly falsified his U. S. Postal Service Leave

Record, when she changed the status of his leave by creating at least two new

leave slips (PS Form 3971's). Even after the Plaintiff, James H. Pickett, Jr.

declined to sign the leave slips, Supervisor Monique Corbett-Richardson falsified

the Plaintiff's leave record anyway. (Please see attatched copies of leave slips

and case 907 F.2d 136....Leilani Beverly  vs  U. S. Postal Service.)

Plaintiff, James H. Pickett, Jr., further claims that approximately six months

ago or more, Supervisor Monique Corbett-Richardson and the "initialing of

leave slips witness", Supervisor Phil Martin was demoted to level PS-4 mail-

handlers and transferred to the Southern Maryland Mail Facility (9201 Edgeworth

Drive) for <u>falsifying time</u>.

Plaintiff, further claims that Supervisor Monique Corbett-Richardson has cost

him tens of thousands of dollars in lost wages, training, retirement benefits,

etc..

Plaintiff, James H. Pickett, Jr., also claims that the U. S. Postal Service has

cost him thousands of dollars in retirement benefits, when it railed to pay
$21,760.18 through payroll deductions several hardship loans borrowed by the
Plaintiff, James H. Pickett, Jr.. ( Please see attached copies of loans numbers
0244927F and 0623006G.)

Plaintiff, further claims that sometimes Acting M D O / Supervisor Monique
Corbett-Richardson was instrumental in the firing of part-time flexible mail-
handler Delphine Mitchell in December 2004 for her alleged poor attendance.
Plaintiff further claims that Ms. Delphine Mitchell's firing was done to lay
the foundation to later fire him because Ms. Delphine Mitchell was under a
Doctor's care and other employees with worst leave records remained on duty, etc..
Plaintiff, hereby respectfully seek as relief from the Honorable Court to be
made whole and request a Trial By Jury, attorneys fee, Court cost....also the
Plaintiff, James H. Pickett, Jr. , is seeking Five Million U. S. Dollars as
compensation for the Thirty Years of benefits that Supervisor Monique Corbett-
Richardson and the U. S. Postal Service through its Gross Negligence, still
continues to put the Plaintiff, James H. Pickett, Jr., in jeopardy of losing,
etc., and all such other relief that this Honorable Court deems just and proper.
Plaintiff further ask the Court to make whole any and all present and former
employees that were suspended and / or fired during the time that sometimes
Acting M D O / Supervisor Monique Corbett-Richardson and Supervisor Phil Martin
were Supervising at the Ronald Reagan National Airport AMC (formerly known as
'National Airport AMC').

Plaintiff further claims that in support of all that he has stated, he has
documentation and witnesses that will attest to the same. Plaintiff, James H.
Pickett, Jr., further claims that with a competent and fair jury, he will
prevail, etc..

I affirm under the penalty of perjury that the foregoing is true to the best
of my knowledge.

Respectfully Submitted,

James H. Pickett, Jr. - Pro Se
5302 Broadwater Court
Temple Hills, Maryland   20748

# UNITED STATES POSTAL SERVICE™

## Request for or Notification of Absence

| Employee's Name (Last, First, M.I.) | Social Security No. | Date Submitted | No. of Hours Requested | PP | Year |
|---|---|---|---|---|---|
| PICKETT, OR James W. | 8707 | 9-13-04 | 14:42.4 | | 04 |

Installation (City, PM leave, shop No., State, and ZIP Code)
ROYAL OAK NORTHSIDE MICH 480SE

| Time of Day/Hr. Request | Scheduled Reporting Time | Employee Can Be Reached At (If needed) | Pay Loc. # D/A Code | NVS Day | From Date | Hour | Thru Date | Hour |
|---|---|---|---|---|---|---|---|---|
| 2:30 pm | 3:00 pm | 674 | | 01.57E | 9-23-04 | 3:11 | 9-23-04 9:10:00 | |

☐ No Call

**Type of Absence**
- ☐ Annual
- ☐ Carrier 701 Rule
- ☐ LWOP (See Reverse)
- ☐ Sick (See Reverse)   ☐ COP
- ☐ Late
- ☐ Other:

Remarks (Do Not Post Medical Information)
WRERA TRAIZZC ACCIDENT TRAMI
(COLLEO OT 230.04.)

**Documentation (For Official Use Only)**
- ☐ For COP Leave (CA1 on File)
- ☐ For Advanced Sick Leave (1221 on File)
- ☐ For Military Leave (Orders Reviewed)
- ☐ For Court Leave (Summons Reviewed)
- ☐ For Higher Level (1723 on File)
- ☐ Scheme Training Testing, Qualifying (Memo on File)

| Revised Schedule for (Date) | Approved In Advance |
|---|---|
| | ☐ Yes   ☐ No |

| | Begin Work | Lunch-Out | Lunch-In | End Work | Total Hours |
|---|---|---|---|---|---|
| | | | | | |

| Day | Init. | Hours |
|---|---|---|
| Sun 01 | | |
| Mon 02 | | |
| Tue 03 | | |
| Wed 04 | | |
| Thur 05 | | |
| Fri 06 | | |
| Sat 07 | | |
| Sun 08 | | |
| Mon 09 | | |
| Tue 10 | | |
| Wed 11 | | |
| Thur 12 | | |
| Fri 13 | | |
| Sat 14 | | |

I understand that the annual leave authorized in excess of amount available to me during the leave year will be changed to LWOP.

Employee's Signature and Date    9-23-04

| Signature of Person Recording Absence and Date | Signature of Supervisor and Date Notified |
|---|---|

**Official Action on Application (Return copy of signed request to employee)**
- ☐ Approved, not FMLA
- ☐ Approved, FMLA
- ☐ Disapproved (Give Reason)
- ☐ Pending Documentation Noted on Reverse.
- ☐ Continued on Reverse

Warning: The furnishing of false information on this form may result in a fine of not more than $10,000 or imprisonment of not more than 5 years, or both. (18 U.S.C. 1001)

PS Form 3971, June 1995



# Request for or Notification of Absence

UNITED STATES POSTAL SERVICE™

Employee's Name (Last, First, M.I.)
PICKETT, JR, CHAS. M.

Social Security No.
xxx xx 8887

Date Submitted
9-30-04

No. of Hours Requested
8.0 HRS

Installation (For PM Name, show City, State, and ZIP Code)
REAGAN NAT'L AIRPORT

NSN Day
WED

Pay Loc. # DIV Code
87X

Time of Call or Request
approx 130

Scheduled Reporting Time
3.00 pm

Employee Can Be Reached At (If needed)

**Type of Absence**
- [ ] Annual
- [ ] Carrier 701 Rate
- [ ] LWOP (See Reverse)
- [x] Sick (See Reverse)
- [ ] Late   [ ] COP
- [ ] Other:

**Documentation (For Official Use Only)**
- [ ] For COP Leave (CA1 on File)
- [ ] For Advanced Sick Leave (1221 on File)
- [ ] For Military Leave (Orders Reviewed)
- [ ] For Court Leave (Summons Reviewed)
- [ ] For Higher Level (1723 on File)
- [ ] Scheme Training Testing, Qualifying (Memo on File)

Revised Schedule for (Date)
- [ ] No Call
- [ ] Approved in Advance

Remarks (Do Not Enter Medical Information)
CALL AT 730 M 1230 N CENTER TO REPORT CALL NOT COMING BACK

**Revised Schedule At (If needed)**

| | From Date | Thru Date |
|---|---|---|
| | 9-29-04 | 9-29-04 |
| | 9:00 pm | HRS 3.0 |
| | | pm |

- [ ] Yes   [ ] No

Begin Work

Lunch-Out

Lunch-In

End Work

I TALKED TO
SUPV. BRENDA
MONROE APPROX.
1:30 pm "(SHE
GAVE ME 8 HRS SL)

I understand that the annual leave I am requesting is in excess of amount available to me during the leave year will be changed to LWOP.

Employee's Signature and Date
[signature]

Signature of Person Recording Absence and Date

Signature of Supervisor and Date Notified

**Official Action on Application (Return copy of signed request to employee)**
- [ ] Approved
- [ ] Approved, FMLA
- [ ] Disapproved (Give Reason)
- [ ] Pending Documentation Noted on Reverse

Supervisor's Signature
[signature]

| PP | Year | | | |
|---|---|---|---|---|
| Day | Int. | Hours | | |
| Sun 08 | | | | |
| Mon 09 | | | | |
| Tue 10 | | | | |
| Wed 11 | | | | |
| Thur 12 | | | | |
| Fri 13 | | | | |
| Sat 14 | | | | |
| Sun 08 | | | | |
| Mon 09 | | | | |
| Tue 10 | | | | |
| Wed 11 | | | | |
| Thur 12 | | | | |
| Fri 13 | | | | |
| Sat 14 | | | | |

- [ ] Continued on Reverse

Warning: The furnishing of false information on this form may result in a fine of not more than $10,000 or imprisonment of not more than 5 years, or both. (18 U.S.C. 1001)

PS Form 3971, June 1995

# Request for or Notification of Absence

| Employee's Name (Last, first, M.I.) | | Social Security No. | Date Submitted | No. of Hours Requested | | | | PP | | Year |
|---|---|---|---|---|---|---|---|---|---|---|
| ICKETT JR, JAMES N | | 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 | 09/28/2004 | 1.99 | | | | 21 | | 2004 |
| Installation (For PM leave, show city, state and ZIP code) | | N/S Day | Pay Loc. # | D/A Code | From Date | Hour | | | Day | Init. | Hours |
| )-5002 - WASHINGTON-REAGAN NATL AMC | | | 674 | 11-0 | 09/23/2004 | 15:00 | | SAT | | |
| Time of Call or Request | Scheduled Reporting Time | Employee Can Be Reached At (If needed) | | Thru Date | Hour | | | SUN | | |
| 21:13 | 15:00 | | | 09/23/2004 | 16:05 | | | MON | | |
| | | | ☐ No Call | | | | | TUE | | |

| Type of Absence | Documentation (For official use only) | Revised Schedule for (Date) | Approved in Advance | | | WED | | |
|---|---|---|---|---|---|---|---|---|
| ☐ Annual | ☐ For FMLA Leave (Certification reviewed) | | ☐ Yes  ☐ No | | | THU | MC | 1.99 |
| ☐ Carrier 701 Rule | ☐ For COP Leave (CA1 on file) | Begin Work | | | | FRI | | |
| ☐ LWOP (See reverse) | ☐ For Advanced Sick Leave (1722 on file) | | | | | SAT | | |
| ☐ Sick (See reverse) | ☐ For Military Leave (Orders reviewed) | Lunch-Out | | | | SUN | | |
| ☐ Late | ☐ For Court Leave (Summons reviewed) | | | | | MON | | |
| ☐ COP | ☐ For Higher Level (1723 on file) | Lunch-In | | | | TUE | | |
| ☐ Other: ALL | ☐ Scheme Training Testing, Qualifying (Memo on file) | | | | | WED | | |
| Remarks (Do not enter medical information) | | End Work | | | | THU | | |
| IT IOD; NOT FMLA | | Total Hours | | | | FRI | | |

| | | | | SAT | | |
|---|---|---|---|---|---|---|
understand that the annual leave authorized in excess of amount available to me during the leave year will be changed to LWOP.

| Signature of Employee and Date | Signature of Person Recording Absence and Date | Signature of Supervisor and Date Notified | SUN | | |
|---|---|---|---|---|---|
| PLEASE TO SIGN | | | MON | | |
| | | | TUE | | |
| ☐ Approved, not FMLA* | ☐ Approved, FMLA | ☐ Approved FMLA, Pending | WED | | |
| | (See Publication 71) | Documentation Noted on Reverse | M Corbett 10/20/04 | THU | | |
| ☐ Disapproved (Give Reasons): | | | FRI | | |
| ☐ Ineligible for FMLA (Estimate eligibility date): | | ☐ Continued on Reverse | | | |

Form 3971, April 2001

Warning: The furnishing of false information on this form may result in a fine of not more than $10,000 or imprisonment of not more than 5 years, or both. (18 U.S.C. 1001)

---

During This Absence, I Was Incapacitated for Duty by:

- ☐ Sickness
- ☐ On-the-Job Injury
- ☐ Off- the-Job Injury
- ☐ Pregnancy and Confinement
- ☐ Undergoing Medical, Dental, or Optical Examination or Treatment (Job related)
- ☐ Undergoing Medical, Dental, or Optical Examination or Treatment (Not job related)

During This Absence, I Was Unavailable for Duty Because:

- ☐ Sick Leave for Dependent Care
- ☐ Birth of Child - Bonding
- ☐ Placement of a Child with Employee for Adoption or Foster Care

Additional Information Regarding Denial of Leave Protection Under FMLA

- ☐ Employee Not Eligible - Less than 1250 Hours Worked.
- ☐ Employee Not Eligible - Not Employed with USPS 1 Year.
- ☐ Employee Has Exhausted FMLA Entitlement in Current Leave Year.
- ☐ Absence Not for a Covered Condition.
- ☐ Absence Not for a Covered Family Member.
- ☐ Requested Documentation Not Provided.
- ☐ Documentation Provided. Does Not Meet Criteria for FMLA Protection

☐ Additional Documentation Required

Privacy Acts: The collection of this information is authorized by 39 USC 401,1001, 1005; 5 USC 5339; and Public Law 103-3. This information will be used to and deny your request for official leave from Postal Service duty. It may be used under the routine uses given in Privacy Act system notices USPS 10 and USPS 120.070 (see appendix of Administrative Support Manual or, if wish to obtain a copy of these notices contact your personnel office). ction of this form is voluntary. If this information is not provided, official may not be granted.

| Leave Type | Time Card Code | PSDS Code |
|---|---|---|
| AL- FMLA | 55/01 | 32 |
| SL- FMLA | 56/02 | 33 |
| LWOP - FMLA - Part Day | 59/05 | 36 |
| LWOP - FMLA - Full Day | 60/06 | 37 |
| LWOP - Lieu of Sick Leave | 59/60 | 20 |
| LWOP - ProRated | 59/60 | 21 |
| LWOP - Personal Reasons | 59/60 | 22 |
| LWOP - Part Day | 59 | 23 |
| LWOP - Full Day | 60 | 23 |
| LWOP - AWOL | 59/60 | 24 |
| LWOP - IOD (Not FMLA) - OWCP | 49 | 25 |
| LWOP - Maternity | 59/60 | 26 |
| LWOP - Suspension | 59/60 | 27 |
| LWOP - Union Official | 84 | 28 |
| LWOP - Suspension Pending Termination | 59/60 | 29 |
| Continuation of Pay - USPS | 71 | 63 |
| Continuation of Pay - USPS-FMLA | 71/03 | 34 |
| Continuation of Pay - FMLA-IOD-OWCP | 49/04 | 35 |
| Court Duty | 61 | 04 |
| Military Leave | 67 | 05 |
| Postmaster's Organization | 89 | 68 |
| Blood Donor Leave | 69 | 69 |
| Other Paid Leave | 86 | 10 |
| Convention Leave | 66 | 12 |
| Acts of God | 78 | 13 |
| Veteran's Funeral | 86 | 10 |
| Relocation | 80 | 15 |
| Civil Defense | 77 | 16 |
| Civil Disorder | 81 | 17 |
| Voting Leave | 85 | 18 |

| | | | PP | | Year |
|---|---|---|---|---|---|
| | | | | Day | Init. | Hours |
| | | | SAT | | |
| | | | SUN | | |
| | | | MON | | |
| | | | TUE | | |
| | | | WED | | |
| | | | THU | | |
| | | | FRI | | |
| | | | SAT | | |
| | | | SUN | | |
| | | | MON | | |
| | | | TUE | | |
| | | | WED | | |
| | | | THU | | |
| | | | FRI | | |

Form 3971, April 2001 (Reverse)

# Request for or Notification of Absence

| Employee's Name (Last, first, M.I.) | Social Security No. 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 | Date Submitted 10/01/2004 | No. of Hours Requested 8.00 | | | | | PP 21 | | Year 2004 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CKETT JR, JAMES H | | | | | | | | | | | |
| Installation (For PM leave, show city, state and ZIP code) 5002 - WASHINGTON-REAGAN NATL AMC | N/S Day | Pay Loc. # 674 | D/A Code 11-0 | From Date 09/28/2004 | Hour 15:00 | | | Day | Init | Hours | |
| ime of Call or Request 18:30 | Scheduled Reporting Time 15:00 | Employee Can Be Reached At (If needed) | | Thru Date 09/28/2004 | Hour 23:30 | | | SAT | | | |
| | | | □ No Call | | | | | SUN | | | |

| ype of Absence | Documentation (For official use only) | Revised Schedule for (Date) | Approved in Advance □ Yes □ No | | | MON | | | |
|---|---|---|---|---|---|---|---|---|---|
| ] Annual | □ Per FMLA Leave (Certification reviewed) | | | | | TUE | | | |
| ] Carrier 701 Rule | □ Per COP Leave (CA1 on file) | | | | | WED | | | |
| ] LWOP (See reverse) | □ Per Advanced Sick Leave (722) on file) | Begin Work | | | | | | | |
| ] Sick (See reverse) | □ Per Military Leave (Orders reviewed) | Lunch-Out | | | | THU | | | |
| ] Late | □ Per Court Leave (Summons reviewed) | | | | | | | | |
| ] COP | □ Per Higher Level (1723 on file) | Lunch-In | | | | FRI | | | |
| ] Other:  SL | □ Scheme Training Testing, Qualifying (Memo on file) | End Work | | | | SAT | | | |
| marks (Do not enter medical information) | | | | | | SUN | | | |
| r IOD; NOT FMLA | | Total Hours | | | | MON | | | |

understand that the annual leave authorized in excess of amount available to me during the leave year will be charged to LWOP.

| ployee's Signature and Date | Signature of Person Recording Absence and Date | Signature of Supervisor and Date Notified | | TUE | | | |
|---|---|---|---|---|---|---|---|
| Refused TO SIGN | | | | x WED | JJC | 8 |

| Approved, not FMLA* | □ Approved, FMLA (See Publication 71) | □ Approved FMLA, Pending Documentation Noted on Reverse | | THU | | | |
|---|---|---|---|---|---|---|---|
| Disapproved (Give Reasons) : | | | | FRI | | | |
| Ineligible for FMLA (Indicate eligibility date): _____ | | □ Continued on Reverse | | | | | |

Form 3971. April 2001

Warning : The furnishing of false information on this form may result in a fine of not more than $10,000 or imprisonment of not more than 5 years, or both. (18 U.S.C. 1001)

---

ing This Absence, I Was Incapacitated for Duty by:

- Sickness
- On-the-Job Injury
- Off- the-Job Injury
- Pregnancy and Confinement
- □ Undergoing Medical, Dental, or Optical Examination or Treatment (Job related)
- □ Undergoing Medical, Dental, or Optical Examination or Treatment (Not job related)

ing This Absence, I Was Unavailable for Duty Because

- Sick Leave for Dependent Care
- Birth of Child - Bonding
- □ Placement of a Child with Employee for Adoption or Foster Care

ional Information Regarding Denial of Leave Protection Under the FMLA

- Employee Not Eligible - Less than 1250 Hours Worked.
- Employee Not Eligible - Not Employed with USPS 1 Year.
- Employee Has Exhausted FMLA Entitlement in Current Leave Year.
- Absence Not for a Covered Condition.
- Absence Not for a Covered Family Member.
- Requested Documentation Not Provided.
- Documentation Provided. Does Not Meet Criteria for FMLA Protection

ional Documentation Required

| Leave Types (Information Only) | | | | | | PP | | Year | |
|---|---|---|---|---|---|---|---|---|---|
| Leave Type | Time Card Code | FMLA Code | | | | | | | |
| | | | | | | Day | Init | Hours | |
| AL - FMLA | 55/01 | 32 | | | | SAT | | | |
| SL - FMLA | 56/02 | 33 | | | | | | | |
| LWOP - FMLA - Part Day | 59/05 | 36 | | | | SUN | | | |
| LWOP - FMLA - Full Day | 60/06 | 37 | | | | | | | |
| LWOP - Lieu of Sick Leave | 59/60 | 20 | | | | MON | | | |
| LWOP - Postdated | 59/60 | 21 | | | | | | | |
| LWOP - Personal Reasons | 59/60 | 22 | | | | TUE | | | |
| LWOP - Part Day | 59 | 23 | | | | | | | |
| LWOP - Full Day | 60 | 23 | | | | WED | | | |
| LWOP - AWOL | 59/60 | 24 | | | | | | | |
| LWOP - IOD (Not FMLA) -OWCP | 60 | 25 | | | | THU | | | |
| LWOP - Maternity | 59/60 | 26 | | | | | | | |
| LWOP - Suspension | 59/60 | 27 | | | | FRI | | | |
| LWOP - Union Official | 64 | 28 | | | | | | | |
| LWOP - Suspension Pending Termination | 59/60 | 29 | | | | SAT | | | |
| Continuation of Pay - USPS | 71 | 03 | | | | SUN | | | |
| Continuation of Pay - USPS-FMLA | 71/03 | 34 | | | | | | | |
| Continuation of Pay - FMLA-IOD-OWCP | 40/04 | 35 | | | | MON | | | |
| Court Duty | 61 | 04 | | | | | | | |
| Military Leave | 67 | 05 | | | | TUE | | | |
| Nation's Organization | 80 | 06 | | | | | | | |
| Blood Donor Leave | 80 | 08 | | | | WED | | | |
| Other Paid Leave | 86 | 09 | | | | | | | |
| Convention Leave | 66 | 12 | | | | THU | | | |
| Acts of God | 78 | 13 | | | | | | | |
| Veteran's Funeral | 86 | 10 | | | | FRI | | | |
| Relocation | 80 | 15 | | | | | | | |
| Civil Defense | 77 | 16 | | | | | | | |
| Civil Disorder | 81 | 17 | | | | | | | |
| Voting Leave | 85 | 18 | | | | | | | |

cy Act: The collection of this information is authorized by 39 USC 401,1001, 1005; 5 USC 8339; and Public Law 103-3. This information will be used to o deny your request for official leave from Postal Service duty. It may be d under the routine uses given in Privacy Act system notices USPS 0 and USPS 120.070 (see appendix of Administrative Support Manual or, is able to obtain a copy of these notices contact your personnel office). sion of this form is voluntary. If this information is not provided, official may not be granted.

orm 3971. April 2001 (Reverse)

PUBLIC LAW 102-166 [S. 1745]; November 21, 1991

## CIVIL RIGHTS ACT OF 1991

*For Legislative History of Act, see p. 549.*

**An Act to amend the Civil Rights Act of 1964 to strengthen and improve Federal civil rights laws, to provide for damages in cases of intentional employment discrimination, to clarify provisions regarding disparate impact actions, and for other purposes.**

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Civil Rights Act of 1991".

**SEC. 2. FINDINGS.**

The Congress finds that—

    (1) additional remedies under Federal law are needed to deter unlawful harassment and intentional discrimination in the workplace;

    (2) the decision of the Supreme Court in Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989) has weakened the scope and effectiveness of Federal civil rights protections; and

    (3) legislation is necessary to provide additional protections against unlawful discrimination in employment.

**SEC. 3. PURPOSES.**

The purposes of this Act are—

    (1) to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace;

    (2) to codify the concepts of "business necessity" and "job related" enunciated by the Supreme Court in Griggs v. Duke Power Co., 401 U.S. 424 (1971), and in the other Supreme Court decisions prior to Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989);

    (3) to confirm statutory authority and provide statutory guidelines for the adjudication of disparate impact suits under title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.); and

    (4) to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination.

# TITLE I—FEDERAL CIVIL RIGHTS REMEDIES

**SEC. 101. PROHIBITION AGAINST ALL RACIAL DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF CONTRACTS.**

Section 1977 of the Revised Statutes (42 U.S.C. 1981) is amended—

    (1) by inserting "(a)" before "All persons within"; and

    (2) by adding at the end the following new subsections:

*Margin notes:*

Civil Rights Act of 1991. 42 USC 1981 note.

42 USC 1981 note.

42 USC 1981 note.

# CERTIFICATE OF ACHIEVEMENT

## *This award is presented to*

# *James H. Pickett Jr.*

*for 30 years of Government Services
and your
contributions to our success.*



*March 13, 2006*

_____

**Darryl Martin**
**Plant Manager**
**Joseph Curseen, Jr. & Thomas Morris, Jr. P&DC**

Westlaw.

907 F.2d 136
907 F.2d 136
(Cite as: 907 F.2d 136)

Page 1

▷

United States Court of Appeals,
Federal Circuit.
Leilani BEVERLY, Petitioner,
v.
UNITED STATES POSTAL SERVICE,
Respondent.
No. 90-3002.

July 3, 1990.

Supervisory postal worker brought action challenging her discharge following determination that she was absent without leave for one day and that she fraudulently claimed sick leave for that day. The Merit Systems Protection Board affirmed decision upholding discharge, and worker petitioned for review. The Court of Appeals, Jack R. Miller, Senior Circuit Judge, held that: (1) substantial evidence supported determination that worker was absent without leave, despite her denial that she was at football game where she was alleged to have been seen, and (2) removal was warranted despite lack of prior related discipline.

Affirmed.

West Headnotes

[1] Officers and Public Employees ⬅72.63
283k72.63 Most Cited Cases
Substantial evidence supported decision of Merit Systems Protection Board that supervisory postal worker was absent without leave, despite worker's assertion that she was not at football game where she was alleged to have been seen, given worker's claim to have slept until 11:00 a.m. on morning of game, but her failure to explain why she was not awakened by numerous calls coming into her home or why she did not answer telephone, and worker's failure to provide sworn testimony from either of her two daughters whom she alleged were at home while she was asleep.

[2] Postal Service ⬅5
306k5 Most Cited Cases

Supervisory postal worker determined to have been absent without leave and to have falsified leave request form in order to obtain compensation for her absence could be discharged as penalty, though she had no previous disciplinary record for similar charges; removal was well within recommended range of penalties for first offense of falsifying documents.
*137 Stuart A. Abramson, Garden City, N.Y., submitted for petitioner.

Lori Joan Dym, Office of Labor Law, U.S. Postal Service, Washington, D.C., submitted for respondent. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and Jesse L. Butler, Asst. Gen. Counsel.

Before MARKEY, Circuit Judge, [FN*] MILLER, Senior Circuit Judge, and BROWNING, District Judge. [FN**]

> FN* Circuit Judge Markey vacated the position of Chief Judge on 27 June 1990.

> FN** District Judge William D. Browning, United States District Court for the District of Arizona, sitting by designation.

JACK R. MILLER, Senior Circuit Judge.

Petitioner, Leilani Beverly, petitions for review of a decision of the Merit Systems Protection Board (MSPB) affirming the decision of an Administrative Judge ("AJ") of the MSPB upholding the discharge of Petitioner from her position of Supervisor, Mails and Delivery, for the United States Postal Service in Colorado Springs, Colorado, for one day of Absence Without Official Leave (AWOL) and for fraudulently claiming sick leave for that day. We affirm.

Petitioner commenced her employment with the United States Postal Service as a Distribution Clerk on June 2, 1979. She was promoted to the position of Supervisor, Mails and Delivery, on December 26, 1981. Prior to the Notice of Proposed Removal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

907 F.2d 136
907 F.2d 136
(Cite as: 907 F.2d 136)

Page 2

issued on October 24, 1988, Petitioner had not been disciplined for any attendance related infractions; nor was there any evidence of her having an attendance problem. While the Notice of Proposed Removal did cite two unrelated minor disciplinary notices, the deciding official did not consider them in his decision letter and found that Petitioner had no disciplinary record for similar charges.

On September 24, 1988, Petitioner was scheduled to work and called in advising that she was ill. The Postal Service claimed that Petitioner was seen at a football game during the time she should have been working. As a result, it subsequently denied Petitioner's request for sick leave, marked her AWOL, and issued a Notice of Proposed Removal. This notice contained three charges. Charge one was failure to fulfill the requirements of her position by reason of being AWOL. Charge two was an allegation that Petitioner had provided a false statement when she denied her presence at the football game. The AJ correctly found that this charge was a mere denial of the charges and should not have been stated as a separate offense. Charge three alleged a fraudulent claim for sick leave when Petitioner submitted an official form requesting payment of sick leave for September 24.

Petitioner responded by denying her presence at the football game and, in support *138 of her denial, submitted notarized statements from individuals attesting to Petitioner's whereabouts on the day in question. The subsequent decision letter removing Petitioner from her position attacked the submission by Petitioner. Among the reasons given by the deciding official for disbelieving Petitioner was the discrediting of the statements submitted by her on the grounds that a notary was not present to attest to the signatures and that she affixed her signature some time thereafter. In affirming the agency action to discharge Petitioner, the AJ held that Petitioner's defenses were attempted fabrications of evidence.

[1] With respect to charge one, that Petitioner was absent without leave, the AJ declined to credit Petitioner's denial that she was at the football game, commenting that her "scenario is so inconceivable in some respects as to adversely affect her credibility." The AJ referred to the fact that Petitioner claimed to have slept until 11:00 a.m. on

the morning of the game, but gave no explanation why she was not awakened by numerous calls coming into her home, or, if she heard the phone, why she did not answer it. Further, the AJ commented that Petitioner did not provide sworn testimony from either of her two daughters whom she had alleged were at home while she was asleep, concluding that "her daughters could not truthfully testify to appellant's presence at home during the time of the game." We are satisfied that the MSPB's decision is supported by substantial evidence on the record as a whole.

[2] With respect to charge three, that Petitioner falsified a Postal Service 3971 leave request form for the day of AWOL in order to obtain compensation for her absence, claiming to have been sick, the following warning appears in bold face letters on Form 3971:

Warning: the furnishing of false information on this form may result in a fine of not more than $10,000 or imprisonment of not more than 5 years, or both. 18 U.S.C. § 1001.

The AJ concluded that one day of absence without leave and Ms. Beverly's fraudulent sick leave claim for that day were serious enough to warrant her discharge. Further, she repeatedly misstates the record when she states that she was removed only "for a single infraction of AWOL," that "we are concerned with only one day of an unexcused absence," and that "no ten year employee should be removed solely for a single day of unauthorized absence."

We reject Petitioner's arguments on the propriety of the penalty, recognizing that removal is well within the recommended range of penalties for a first offense of falsifying documents. Also, the testimony credited by the AJ and circumstantial elements of this case constitute substantial evidence supporting the decision on charge three. *Brewer v. United States Postal Service*, 647 F.2d 1093, 1096, 227 Ct.Cl. 276 (1981), *cert. denied*, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982).

AFFIRMED.

907 F.2d 136

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



# Thrift Savings Plan

P.O. Box 385021
Birmingham, AL  35238

0101971 01 AT 0.308 **AUTO  H7 1 4065 20750-010000

JAMES H. PICKETT JR
PO BOX 100
OXON HILL, MD 20750-0100

LOAN: 0244927F
09/29/2006

Dear Participant:

  The Thrift Savings Plan (TSP) has closed your loan by declaring a taxable distribution as indicated below:

**TSP Loan:** 0244927F General Purpose
**Amount of Taxable Distribution:** $9,068.73
**Effective Date of Taxable Distribution:** 09/29/2006
**Processing Date of Taxable Distribution:** 09/29/2006
**Year Reported as Taxable Income:** 2006
**Reason for Taxable Distribution:** Default on loan

  You will have to pay Federal tax (and possibly, a 10% early withdrawal penalty tax) on the principal and interest outstanding as of the date of the taxable distribution. Also, you are not eligible for another TSP loan for 12 months from the date of this taxable distribution.

  If you have questions, call the ThriftLine number shown below. Callers outside the United States and Canada should call (404) 233-4400 (not a toll-free number). The TSP Service Office hours are Monday through Friday 7 a.m to 9 p.m. eastern time. You can also write to the TSP Service Office. Please include your daytime telephone number and your entire Social Security number on all correspondence. **Note:** If you are a member of the uniformed services, do not provide your Defense Switched Network (DSN) telephone number.

**Web Site: www.tsp.gov**  **ThriftLine: 1-TSP-YOU-FRST (1-877-968-3778)**  **TDD: 1-TSP-THRIFT5 (1-877-847-4385)**
**Fax number: 1-866-817-5023**

Notice: LC4033



# Thrift Savings Plan
P.O. Box 385021
Birmingham, AL 35238

0101972 01 AT 0.308 **AUTO H7 1 4065 20750-010000

JAMES H. PICKETT JR
PO BOX 100
OXON HILL, MD 20750-0100

LOAN: 0623006G
09/29/2006

Dear Participant:

      The Thrift Savings Plan (TSP) has closed your loan by declaring a taxable distribution as indicated below:

**TSP Loan:**    0623006G  General Purpose
**Amount of Taxable Distribution:**   $12,691.45
**Effective Date of Taxable Distribution:**   09/29/2006
**Processing Date of Taxable Distribution:**   09/29/2006
**Year Reported as Taxable Income:**   2006
**Reason for Taxable Distribution:**   Default on loan

      You will have to pay Federal tax (and possibly, a 10% early withdrawal penalty tax) on the principal and interest outstanding as of the date of the taxable distribution. Also, you are not eligible for another TSP loan for 12 months from the date of this taxable distribution.

      If you have questions, call the ThriftLine number shown below. Callers outside the United States and Canada should call (404) 233-4400 (not a toll-free number). The TSP Service Office hours are Monday through Friday 7 a.m to 9 p.m. eastern time. You can also write to the TSP Service Office. Please include your daytime telephone number and your entire Social Security number on all correspondence. **Note:** If you are a member of the uniformed services, do not provide your Defense Switched Network (DSN) telephone number.

FORM NLRB-501

FORM EXEMPT UNDER 44 U.S.C. 3512

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
## CHARGE AGAINST EMPLOYER

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| | |

**INSTRUCTIONS**
File an original and 4 copies of this charge with NLRB Regional Director for
the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer | b. Number of workers employed |
|---|---|
| United States Postal Service | 120 (approximately) |

| c. Address (street, city, state, ZIP code) | d. Employer Representative | e. Telephone No. |
|---|---|---|
| Reagan National Airport, # 1 W. Post Office Rd. Washington, D. C. 20001-9706 | Herbert H. Owens | 703 294 5910 |
| | | Fax No. 703-294-5965 |

| f. Type of Establishment (factory, mine, wholesaler, etc.) | g. Identify principal product or service |
|---|---|
| Post Office | Delivery of U. S. Mail |

h. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (3) of the National Labor Relations Act and within the meaning of the Postal Reorganization Act..

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

At all times within the previous six months, the above-named Employer, by its officers, agents and representatives, has discriminated against its employee James Pickett, because of his membership in and activities on behalf of the American Postal Workers Union, by: creating a more onerous and hostile work environment for him; denying overtime assignments to him; reducing his hours of work; denying him the contractual right to see his shop steward, including by threatening to call the police; and generally harassing him.

During this same period of time, the above-named Employer has restrained and coerced its employees in the exercise of their rights guaranteed in Section 7 of the Act by denying employees access to its own APWU bulletin board based on the content of the Union literature.

By the above and other acts, the above-named employer has interfered with, restrained, and coerced employees in the exercise of the rights guaranteed in Section 7 of the Act.

3. Full name of party filing charge (if labor organization, give full name, including local name and number)

James H. Pickett, Jr.

| 4a. Address (street and number, city, state and ZIP code) | 4b. Telephone No. |
|---|---|
| 5302 Broadwater Ct. Temple Hills, MD 20748 | 301-806-6541 |
| | Fax No. 301-505-9009 |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization.

### 6. DECLARATION
I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By _[signature]_    Title __An Individual__
Signature of representative or person making charge

__James H. Pickett, Jr.__ (Print Name)    Telephone No. (301) 806-6541/Date AUGUST 15, 2003

Address
Same as above    Fax No. (301) 505-9009

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT
(U.S. CODE, TITLE 18, SECTION 1001)**



**Patricia Johnson**
**President**

**September 25, 2002**

**USPS Plant Manager Owens**
**National Airport Mail Center**
**WDC 2001-9706**

**Dear Manager Owens**

**Please be advised that James Pickett is hereby certified as APWU's representative for tours I and III. In addition he will cover all sections. If you have any concerns and or questions please feel free in contacting me at the above address and or telephone number.**

**Pat Johnson President**
**NCSMAL, APWU**

**Faxed 703-294-5965**

PUBLIC LAW 102–166 [S. 1745]; November 21, 1991

## CIVIL RIGHTS ACT OF 1991

*For Legislative History of Act, see p. 549.*

**An Act to amend the Civil Rights Act of 1964 to strengthen and improve Federal civil rights laws, to provide for damages in cases of intentional employment discrimination, to clarify provisions regarding disparate impact actions, and for other purposes.**

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Civil Rights Act of 1991".

Civil Rights Act of 1991.
42 USC 1981 note.

**SEC. 2. FINDINGS.**

The Congress finds that—

(1) additional remedies under Federal law are needed to deter unlawful harassment and intentional discrimination in the workplace;

(2) the decision of the Supreme Court in Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989) has weakened the scope and effectiveness of Federal civil rights protections; and

(3) legislation is necessary to provide additional protections against unlawful discrimination in employment.

42 USC 1981 note.

**SEC. 3. PURPOSES.**

The purposes of this Act are—

(1) to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace;

(2) to codify the concepts of "business necessity" and "job related" enunciated by the Supreme Court in Griggs v. Duke Power Co., 401 U.S. 424 (1971), and in the other Supreme Court decisions prior to Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989);

(3) to confirm statutory authority and provide statutory guidelines for the adjudication of disparate impact suits under title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.); and

(4) to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination.

42 USC 1981 note.

# TITLE I—FEDERAL CIVIL RIGHTS REMEDIES

**SEC. 101. PROHIBITION AGAINST ALL RACIAL DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF CONTRACTS.**

Section 1977 of the Revised Statutes (42 U.S.C. 1981) is amended—

(1) by inserting "(a)" before "All persons within"; and

(2) by adding at the end the following new subsections:

"(b) For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

"(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.".

### SEC. 102. DAMAGES IN CASES OF INTENTIONAL DISCRIMINATION.

The Revised Statutes are amended by inserting after section 1977 (42 U.S.C. 1981) the following new section:

42 USC 1981a.    "SEC. 1977A. DAMAGES IN CASES OF INTENTIONAL DISCRIMINATION IN EMPLOYMENT.

"(a) RIGHT OF RECOVERY.—

"(1) CIVIL RIGHTS.—In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e–2 or 2000e–3), and provided that the complaining party cannot recover under section 1977 of the Revised Statutes (42 U.S.C. 1981), the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

"(2) DISABILITY.—In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 505(a)(1) of the Rehabilitation Act of 1973 (29 U.S.C. 794a(a)(1)), respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791) and the regulations implementing section 501, or who violated the requirements of section 501 of the Act or the regulations implementing section 501 concerning the provision of a reasonable accommodation, or section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

"(3) REASONABLE ACCOMMODATION AND GOOD FAITH EFFORT.— In cases where a discriminatory practice involves the provision of a reasonable accommodation pursuant to section 102(b)(5) of the Americans with Disabilities Act of 1990 or regulations implementing section 501 of the Rehabilitation Act of 1973, damages may not be awarded under this section where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide such individual

with an equa
undue hards
"(b) COMPENSA1
"(1) DETER
party may re
a respondent
political sub
that the res
discriminator
ence to the fe
"(2) EXCLU
satory dama
backpay, int
thorized und
"(3) LIMITA
damages awa
emotional pa
of enjoymen
amount of p
not exceed, fe
"(A) i
and few
endar w
$50,000;
"(B) i
and few
endar w
$100,000
"(C) i
and few
endar w
$200,000
"(D) i
employe
current
"(4) CONS
strued to lin
1977 of the H
"(c) JURY TRI
unitive damage
"(1) any pa
"(2) the c
described in
"(d) DEFINITIO
"(1) COM
means—
"(A) i
under s
Commis
bring a
Rights .
"(B) i
under s
Commis
an actic
habilita
who ma

with an equally effective opportunity and would not cause an undue hardship on the operation of the business.

"(b) COMPENSATORY AND PUNITIVE DAMAGES.—

"(1) DETERMINATION OF PUNITIVE DAMAGES.—A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

"(2) EXCLUSIONS FROM COMPENSATORY DAMAGES.—Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964.

"(3) LIMITATIONS.—The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—

"(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

"(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and

"(C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and

"(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

"(4) CONSTRUCTION.—Nothing in this section shall be construed to limit the scope of, or the relief available under, section 1977 of the Revised Statutes (42 U.S.C. 1981).

"(c) JURY TRIAL.—If a complaining party seeks compensatory or unitive damages under this section—

"(1) any party may demand a trial by jury; and

"(2) the court shall not inform the jury of the limitations described in subsection (b)(3).

"(d) DEFINITIONS.—As used in this section:

"(1) COMPLAINING PARTY.—The term 'complaining party' means—

"(A) in the case of a person seeking to bring an action under subsection (a)(1), the Equal Employment Opportunity Commission, the Attorney General, or a person who may bring an action or proceeding under title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.); or

"(B) in the case of a person seeking to bring an action under subsection (a)(2), the Equal Employment Opportunity Commission, the Attorney General, a person who may bring an action or proceeding under section 505(a)(1) of the Rehabilitation Act of 1973 (29 U.S.C. 794a(a)(1)), or a person who may bring an action or proceeding under title I of the

Americans with Disabilities Act of 1990 (42 U.S.C. 12101 et seq.).

"(2) DISCRIMINATORY PRACTICE.—The term 'discriminatory practice' means the discrimination described in paragraph (1), or the discrimination or the violation described in paragraph (2), of subsection (a).

### SEC. 103. ATTORNEY'S FEES.

The last sentence of section 722 of the Revised Statutes (42 U.S.C. 1988) is amended by inserting ", 1977A" after "1977".

### SEC. 104. DEFINITIONS.

Section 701 of the Civil Rights Act of 1964 (42 U.S.C. 2000e) is amended by adding at the end the following new subsections:

"(l) The term 'complaining party' means the Commission, the Attorney General, or a person who may bring an action or proceeding under this title.

"(m) The term 'demonstrates' means meets the burdens of production and persuasion.

"(n) The term 'respondent' means an employer, employment agency, labor organization, joint labor-management committee controlling apprenticeship or other training or retraining program, including an on-the-job training program, or Federal entity subject to section 717.".

### SEC. 105. BURDEN OF PROOF IN DISPARATE IMPACT CASES.

(a) Section 703 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-2) is amended by adding at the end the following new subsection:

"(k)(1)(A) An unlawful employment practice based on disparate impact is established under this title only if—

"(i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or

"(ii) the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

"(B)(i) With respect to demonstrating that a particular employment practice causes a disparate impact as described in subparagraph (A)(i), the complaining party shall demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice.

"(ii) If the respondent demonstrates that a specific employment practice does not cause the disparate impact, the respondent shall not be required to demonstrate that such practice is required by business necessity.

"(C) The demonstration referred to by subparagraph (A)(ii) shall be in accordance with the law as it existed on June 4, 1989, with respect to the concept of 'alternative employment practice'.

"(2) A demonstratio business necessity ma intentional discrimina

"(3) Notwithstandi barring the employm ingly uses or possess ules I and II of secti U.S.C. 802(6)), other th the supervision of a l use or possession aut any other provision o employment practice applied with an inte gion, sex, or national

(b) No statements appearing at Vol. 13 25, 1991) shall be con any way as legislativ sion of this Act tha cumulation/alternati

### SEC. 106. PROHIBITION

Section 703 of the amended by section the following new sub

"(l) It shall be an u in connection with t didates for employm different cutoff score ment related tests national origin.".

### SEC. 107. CLARIFYING ERATION ( ORIGIN IN

(a) IN GENERAL.— U.S.C. 2000e-2) (as amended by adding a

"(m) Except as o employment practic demonstrates that r motivating factor fo factors also motivate

(b) ENFORCEMENT U.S.C. 2000e-5(g)) is

(1) by designa graph (1);

(2) by designa indenting accor

(3) by adding

"(B) On a claim i section 703(m) and would have taken t sible motivating fact

"(i) may gran provided in cla

"(2) A demonstration that an employment practice is required by business necessity may not be used as a defense against a claim of intentional discrimination under this title.

"(3) Notwithstanding any other provision of this title, a rule barring the employment of an individual who currently and knowingly uses or possesses a controlled substance, as defined in schedules I and II of section 102(6) of the Controlled Substances Act (21 U.S.C. 802(6)), other than the use or possession of a drug taken under the supervision of a licensed health care professional, or any other use or possession authorized by the Controlled Substances Act or any other provision of Federal law, shall be considered an unlawful employment practice under this title only if such rule is adopted or applied with an intent to discriminate because of race, color, religion, sex, or national origin.".

(b) No statements other than the interpretive memorandum appearing at Vol. 137 Congressional Record S 15276 (daily ed. Oct. 25, 1991) shall be considered legislative history of, or relied upon in any way as legislative history in construing or applying, any provision of this Act that relates to Wards Cove—Business necessity/ cumulation/alternative business practice.

42 USC 1981
note.

### SEC. 106. PROHIBITION AGAINST DISCRIMINATORY USE OF TEST SCORES.

Section 703 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-2) (as amended by section 105) is further amended by adding at the end the following new subsection:

"(l) It shall be an unlawful employment practice for a respondent, in connection with the selection or referral of applicants or candidates for employment or promotion, to adjust the scores of, use different cutoff scores for, or otherwise alter the results of, employment related tests on the basis of race, color, religion, sex, or national origin.".

### SEC. 107. CLARIFYING PROHIBITION AGAINST IMPERMISSIBLE CONSIDERATION OF RACE, COLOR, RELIGION, SEX, OR NATIONAL ORIGIN IN EMPLOYMENT PRACTICES.

(a) IN GENERAL.—Section 703 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-2) (as amended by sections 105 and 106) is further amended by adding at the end the following new subsection:

"(m) Except as otherwise provided in this title, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.".

(b) ENFORCEMENT PROVISIONS.—Section 706(g) of such Act (42 U.S.C. 2000e-5(g)) is amended—

(1) by designating the first through third sentences as paragraph (1);

(2) by designating the fourth sentence as paragraph (2)(A) and indenting accordingly; and

(3) by adding at the end the following new subparagraph:

"(B) On a claim in which an individual proves a violation under section 703(m) and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

"(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs dem-

onstrated to be directly attributable only to the pursuit of a claim under section 703(m); and

"(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).".

### SEC. 108. FACILITATING PROMPT AND ORDERLY RESOLUTION OF CHALLENGES TO EMPLOYMENT PRACTICES IMPLEMENTING LITIGATED OR CONSENT JUDGMENTS OR ORDERS.

Section 703 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–2) (as amended by sections 105, 106, and 107 of this title) is further amended by adding at the end the following new subsection:

"(n)(1)(A) Notwithstanding any other provision of law, and except as provided in paragraph (2), an employment practice that implements and is within the scope of a litigated or consent judgment or order that resolves a claim of employment discrimination under the Constitution or Federal civil rights laws may not be challenged under the circumstances described in subparagraph (B).

"(B) A practice described in subparagraph (A) may not be challenged in a claim under the Constitution or Federal civil rights laws—

"(i) by a person who, prior to the entry of the judgment or order described in subparagraph (A), had—

"(I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and

"(II) a reasonable opportunity to present objections to such judgment or order; or

"(ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.

"(2) Nothing in this subsection shall be construed to—

"(A) alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened;

"(B) apply to the rights of parties to the action in which a litigated or consent judgment or order was entered, or of members of a class represented or sought to be represented in such action, or of members of a group on whose behalf relief was sought in such action by the Federal Government;

"(C) prevent challenges to a litigated or consent judgment or order on the ground that such judgment or order was obtained through collusion or fraud, or is transparently invalid or was entered by a court lacking subject matter jurisdiction; or

"(D) authorize or permit the denial to any person of the due process of law required by the Constitution.

"(3) Any action not precluded under this subsection that challenges an employment consent judgment or order described in paragraph (1) shall be brought in the court, and if possible before the judge, that entered such judgment or order. Nothing in this subsec-

Nov. 21

tion shall preclu
of title 28, Unite

SEC. 109. PROTEC

(a) DEFINITION
Act of 1964 (42 U
with Disabilities
by adding at the
a foreign countr
of the United St

(b) EXEMPTION
(1) CIVIL F
Act of 1964 (
(A) by
(B) by
"(b) It shall
employer (or a
organization, e
committee contr
(including on-th
wise prohibited
workplace in a
would cause suc
such agency, or
country in whic

"(c)(1) If an er
poration is a for
or 704 engaged
engaged in by su

"(2) Sections
foreign operatio
controlled by an

"(3) For purpo
an employer con
"(A) the i
"(B) the c
"(C) the c
"(D) the c
of the employer
(2) AMERI
the America
amended—
(A) b
(B) b
subsect
"(c) COVERED
"(1) IN GF
for a covere
nation und
workplace i
would cause
country in v
"(2) CONT
"(A)
tion wh
practic

tion shall preclude a transfer of such action pursuant to section 1404 of title 28, United States Code.".

### SEC. 109. PROTECTION OF EXTRATERRITORIAL EMPLOYMENT.

(a) DEFINITION OF EMPLOYEE.—Section 701(f) of the Civil Rights Act of 1964 (42 U.S.C. 2000e(f)) and section 101(4) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111(4)) are each amended by adding at the end the following: "With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.".

(b) EXEMPTION.—

(1) CIVIL RIGHTS ACT OF 1964.—Section 702 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–1) is amended—

(A) by inserting "(a)" after "SEC. 702."; and

(B) by adding at the end the following:

"(b) It shall not be unlawful under section 703 or 704 for an employer (or a corporation controlled by an employer), labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining (including on-the-job training programs) to take any action otherwise prohibited by such section, with respect to an employee in a workplace in a foreign country if compliance with such section would cause such employer (or such corporation), such organization, such agency, or such committee to violate the law of the foreign country in which such workplace is located.

"(c)(1) If an employer controls a corporation whose place of incorporation is a foreign country, any practice prohibited by section 703 or 704 engaged in by such corporation shall be presumed to be engaged in by such employer.

"(2) Sections 703 and 704 shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer.

"(3) For purposes of this subsection, the determination of whether an employer controls a corporation shall be based on—

"(A) the interrelation of operations;

"(B) the common management;

"(C) the centralized control of labor relations; and

"(D) the common ownership or financial control,

of the employer and the corporation.".

(2) AMERICANS WITH DISABILITIES ACT OF 1990.—Section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112) is amended—

(A) by redesignating subsection (c) as subsection (d); and

(B) by inserting after subsection (b) the following new subsection:

"(c) COVERED ENTITIES IN FOREIGN COUNTRIES.—

"(1) IN GENERAL.—It shall not be unlawful under this section for a covered entity to take any action that constitutes discrimination under this section with respect to an employee in a workplace in a foreign country if compliance with this section would cause such covered entity to violate the law of the foreign country in which such workplace is located.

"(2) CONTROL OF CORPORATION.—

"(A) PRESUMPTION.—If an employer controls a corporation whose place of incorporation is a foreign country, any practice that constitutes discrimination under this section

and is engaged in by such corporation shall be presumed to be engaged in by such employer.

"(B) EXCEPTION.—This section shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer.

"(C) DETERMINATION.—For purposes of this paragraph, the determination of whether an employer controls a corporation shall be based on—

"(i) the interrelation of operations;

"(ii) the common management;

"(iii) the centralized control of labor relations; and

"(iv) the common ownership or financial control,

of the employer and the corporation.".

42 USC 2000e note.

(c) APPLICATION OF AMENDMENTS.—The amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act.

### SEC. 110. TECHNICAL ASSISTANCE TRAINING INSTITUTE.

(a) TECHNICAL ASSISTANCE.—Section 705 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–4) is amended by adding at the end the following new subsection:

Establishment.

"(j)(1) The Commission shall establish a Technical Assistance Training Institute, through which the Commission shall provide technical assistance and training regarding the laws and regulations enforced by the Commission.

"(2) An employer or other entity covered under this title shall not be excused from compliance with the requirements of this title because of any failure to receive technical assistance under this subsection.

Appropriation authorization.
42 USC 2000e–4 note.

"(3) There are authorized to be appropriated to carry out this subsection such sums as may be necessary for fiscal year 1992.".

(b) EFFECTIVE DATE.—The amendment made by this section shall take effect on the date of the enactment of this Act.

### SEC. 111. EDUCATION AND OUTREACH.

Section 705(h) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–4(h)) is amended—

(1) by inserting "(1)" after "(h)"; and

(2) by adding at the end the following new paragraph:

"(2) In exercising its powers under this title, the Commission shall carry out educational and outreach activities (including dissemination of information in languages other than English) targeted to—

"(A) individuals who historically have been victims of employment discrimination and have not been equitably served by the Commission; and

"(B) individuals on whose behalf the Commission has authority to enforce any other law prohibiting employment discrimination,

concerning rights and obligations under this title or such law, as the case may be.".

### SEC. 112. EXPANSION OF RIGHT TO CHALLENGE DISCRIMINATORY SENIORITY SYSTEMS.

Section 706(e) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(e)) is amended—

(1) by inserting "(1)" before "A charge under this section"; and

Nov. 21

(2) by addin

"(2) For purpose occurs, with resp an intentionally (whether or not th of the seniority when an individua a person aggriev system or provisio

### SEC. 113. AUTHORI

(a) REVISED ST amended—

(1) by desig tions (a) and

(2) by addin

"(c) In awardir action or proceed of the Revised S expert fees as par

(b) CIVIL RIGHT Act of 1964 (42 U ing expert fees)" a

### SEC. 114. PROVIDII LIMITA MENT.

Section 717 of t amended—

(1) in subse "90 days"; an

(2) in subse same interes available as i

### SEC. 115. NOTICE C TION IN

Section 7(e) of t (29 U.S.C. 626(e))

(1) by strik

(2) by stril

(3) by strik

(4) by addir

"If a charge filed or the proceeding the Commission, A civil action ma in section 11(a) a 90 days after the

### SEC. 116. LAWFUL AND CC

Nothing in the to affect court-or agreements, that

105 STAT. 1078

(2) by adding at the end the following new paragraph:

"(2) For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this title (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.".

### SEC. 113. AUTHORIZING AWARD OF EXPERT FEES.

(a) REVISED STATUTES.—Section 722 of the Revised Statutes is amended—                                                        42 USC 1988.

    (1) by designating the first and second sentences as subsections (a) and (b), respectively, and indenting accordingly; and

    (2) by adding at the end the following new subsection:

"(c) In awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1977 or 1977A of the Revised Statutes, the court, in its discretion, may include expert fees as part of the attorney's fee.".

(b) CIVIL RIGHTS ACT OF 1964.—Section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(k)) is amended by inserting "(including expert fees)" after "attorney's fee".

### SEC. 114. PROVIDING FOR INTEREST AND EXTENDING THE STATUTE OF LIMITATIONS IN ACTIONS AGAINST THE FEDERAL GOVERNMENT.

Section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16) is amended—

    (1) in subsection (c), by striking "thirty days" and inserting "90 days"; and

    (2) in subsection (d), by inserting before the period ", and the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties.".

### SEC. 115. NOTICE OF LIMITATIONS PERIOD UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967.

Section 7(e) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 626(e)) is amended—

    (1) by striking paragraph (2);

    (2) by striking the paragraph designation in paragraph (1);

    (3) by striking "Sections 6 and" and inserting "Section"; and

    (4) by adding at the end the following:

"If a charge filed with the Commission under this Act is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section by a person defined in section 11(a) against the respondent named in the charge within 90 days after the date of the receipt of such notice.".

### SEC. 116. LAWFUL COURT-ORDERED REMEDIES, AFFIRMATIVE ACTION, AND CONCILIATION AGREEMENTS NOT AFFECTED.

42 USC 1981 note.

Nothing in the amendments made by this title shall be construed to affect court-ordered remedies, affirmative action, or conciliation agreements, that are in accordance with the law.

Case 1:07-cv-01431-PLF    Document 6-2    Filed 12/11/2007    Page 24 of 44

P.L. 102–166
Sec. 117
Government
employees.
2 USC 60*l*.

## SEC. 117. COVERAGE OF HOUSE OF REPRESENTATIVES AND THE AGENCIES OF THE LEGISLATIVE BRANCH.

(a) COVERAGE OF THE HOUSE OF REPRESENTATIVES.—

(1) IN GENERAL.—Notwithstanding any provision of title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.) or of other law, the purposes of such title shall, subject to paragraph (2), apply in their entirety to the House of Representatives.

(2) EMPLOYMENT IN THE HOUSE.—

(A) APPLICATION.—The rights and protections under title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.) shall, subject to subparagraph (B), apply with respect to any employee in an employment position in the House of Representatives and any employing authority of the House of Representatives.

(B) ADMINISTRATION.—

(i) IN GENERAL.—In the administration of this paragraph, the remedies and procedures made applicable pursuant to the resolution described in clause (ii) shall apply exclusively.

(ii) RESOLUTION.—The resolution referred to in clause (i) is the Fair Employment Practices Resolution (House Resolution 558 of the One Hundredth Congress, as agreed to October 4, 1988), as incorporated into the Rules of the House of Representatives of the One Hundred Second Congress as Rule LI, or any other provision that continues in effect the provisions of such resolution.

(C) EXERCISE OF RULEMAKING POWER.—The provisions of subparagraph (B) are enacted by the House of Representatives as an exercise of the rulemaking power of the House of Representatives, with full recognition of the right of the House to change its rules, in the same manner, and to the same extent as in the case of any other rule of the House.

(b) INSTRUMENTALITIES OF CONGRESS.—

(1) IN GENERAL.—The rights and protections under this title and title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.) shall, subject to paragraph (2), apply with respect to the conduct of each instrumentality of the Congress.

(2) ESTABLISHMENT OF REMEDIES AND PROCEDURES BY INSTRUMENTALITIES.—The chief official of each instrumentality of the Congress shall establish remedies and procedures to be utilized with respect to the rights and protections provided pursuant to paragraph (1). Such remedies and procedures shall apply exclusively, except for the employees who are defined as Senate employees, in section 301(c)(1).

(3) REPORT TO CONGRESS.—The chief official of each instrumentality of the Congress shall, after establishing remedies and procedures for purposes of paragraph (2), submit to the Congress a report describing the remedies and procedures.

(4) DEFINITION OF INSTRUMENTALITIES.—For purposes of this section, instrumentalities of the Congress include the following: the Architect of the Capitol, the Congressional Budget Office, the General Accounting Office, the Government Printing Office, the Office of Technology Assessment, and the United States Botanic Garden.

(5) CONST
enforcement
717 of title V
16).

SEC. 118. ALTERN/

Where appropr
alternative mean
tiations, concilia
and arbitration, i
Acts or provision

# TI'

SEC. 201. SHORT T

This title may I

SEC. 202. FINDING

(a) FINDINGS.—

(1) despite
women and
ment and de

(2) artifici
minorities in

(3) United
women and
are increasir
work force;

(4) the "G
ment of Lal
"Report on t
in raising pu

(A) th
the man
States w

(B) th
line func

(C) th
to creder

(D) th
advance

(5) the es
raised by the

(A) foo
ing arti:
minoriti
business

(B) pr

(6) a com
manner in
are filled, th
to foster the
compensatio
corporate se
and policies

Nov. 21      CIVIL RIGHTS ACT OF 1991

(5) CONSTRUCTION.—Nothing in this section shall alter the enforcement procedures for individuals protected under section 717 of title VII for the Civil Rights Act of 1964 (42 U.S.C. 2000e-16).

## SEC. 118. ALTERNATIVE MEANS OF DISPUTE RESOLUTION.

42 USC 1981 note.

Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.

# TITLE II—GLASS CEILING

Glass Ceiling Act of 1991. Women. Minorities.

## SEC. 201. SHORT TITLE.

This title may be cited as the "Glass Ceiling Act of 1991".

42 USC 2000e note.

## SEC. 202. FINDINGS AND PURPOSE.

42 USC 2000e note.

(a) FINDINGS.—Congress finds that—

(1) despite a dramatically growing presence in the workplace, women and minorities remain underrepresented in management and decisionmaking positions in business;

(2) artificial barriers exist to the advancement of women and minorities in the workplace;

(3) United States corporations are increasingly relying on women and minorities to meet employment requirements and are increasingly aware of the advantages derived from a diverse work force;

(4) the "Glass Ceiling Initiative" undertaken by the Department of Labor, including the release of the report entitled "Report on the Glass Ceiling Initiative", has been instrumental in raising public awareness of—

(A) the underrepresentation of women and minorities at the management and decisionmaking levels in the United States work force;

(B) the underrepresentation of women and minorities in line functions in the United States work force;

(C) the lack of access for qualified women and minorities to credential-building developmental opportunities; and

(D) the desirability of eliminating artificial barriers to the advancement of women and minorities to such levels;

(5) the establishment of a commission to examine issues raised by the Glass Ceiling Initiative would help—

(A) focus greater attention on the importance of eliminating artificial barriers to the advancement of women and minorities to management and decisionmaking positions in business; and

(B) promote work force diversity;

(6) a comprehensive study that includes analysis of the manner in which management and decisionmaking positions are filled, the developmental and skill-enhancing practices used to foster the necessary qualifications for advancement, and the compensation programs and reward structures utilized in the corporate sector would assist in the establishment of practices and policies promoting opportunities for, and eliminating artifi-

cial barriers to, the advancement of women and minorities to management and decisionmaking positions; and

(7) a national award recognizing employers whose practices and policies promote opportunities for, and eliminate artificial barriers to, the advancement of women and minorities will foster the advancement of women and minorities into higher level positions by—

(A) helping to encourage United States companies to modify practices and policies to promote opportunities for, and eliminate artificial barriers to, the upward mobility of women and minorities; and

(B) providing specific guidance for other United States employers that wish to learn how to revise practices and policies to improve the access and employment opportunities of women and minorities.

(b) PURPOSE.—The purpose of this title is to establish—

(1) a Glass Ceiling Commission to study—

(A) the manner in which business fills management and decisionmaking positions;

(B) the developmental and skill-enhancing practices used to foster the necessary qualifications for advancement into such positions; and

(C) the compensation programs and reward structures currently utilized in the workplace; and

(2) an annual award for excellence in promoting a more diverse skilled work force at the management and decisionmaking levels in business.

42 USC 2000e note.

SEC. 203. ESTABLISHMENT OF GLASS CEILING COMMISSION.

(a) IN GENERAL.—There is established a Glass Ceiling Commission (referred to in this title as the "Commission"), to conduct a study and prepare recommendations concerning—

(1) eliminating artificial barriers to the advancement of women and minorities; and

(2) increasing the opportunities and developmental experiences of women and minorities to foster advancement of women and minorities to management and decisionmaking positions in business.

(b) MEMBERSHIP.—

(1) COMPOSITION.—The Commission shall be composed of 21 members, including—

(A) six individuals appointed by the President;

(B) six individuals appointed jointly by the Speaker of the House of Representatives and the Majority Leader of the Senate;

(C) one individual appointed by the Majority Leader of the House of Representatives;

(D) one individual appointed by the Minority Leader of the House of Representatives;

(E) one individual appointed by the Majority Leader of the Senate;

(F) one individual appointed by the Minority Leader of the Senate;

(G) two Members of the House of Representatives appointed jointly by the Majority Leader and the Minority Leader of the House of Representatives;

(H) tw
Majority
and

(I) the
(2) CONSID
paragraphs (
ity shall con
whether the

(A) ar
and mino
(B) hol
poration
issues re:
(C) pos
regardin
(3) BALANC
graphs (A) an
shall seek to
among the gr
(B), and (C) of
(c) CHAIRPERSO
Chairperson of the
(d) TERM OF OF
the Commission.
(e) VACANCIES.—
Commission shall
appointment for t
affect the power o
the Commission.
(f) MEETINGS.—
(1) MEETING
sion shall mee
pending the co
The Commiss
person or a m
the additional
(2) MEETING
shall meet on
described in a
tional meeting
of the Commi:
(g) QUORUM.—A
quorum for the tra
(h) COMPENSATIO
(1) COMPENS
not an employ
pensation at th
of the Executi
States Code,
performance o
at meetings ai
conduct the du
(2) TRAVEL E
receive travel
ence, at rates
chapter I of ch

(H) two Members of the Senate appointed jointly by the Majority Leader and the Minority Leader of the Senate; and

(I) the Secretary of Labor.

(2) CONSIDERATIONS.—In making appointments under subparagraphs (A) and (B) of paragraph (1), the appointing authority shall consider the background of the individuals, including whether the individuals—

(A) are members of organizations representing women and minorities, and other related interest groups;

(B) hold management or decisionmaking positions in corporations or other business entities recognized as leaders on issues relating to equal employment opportunity; and

(C) possess academic expertise or other recognized ability regarding employment issues.

(3) BALANCE.—In making the appointments under subparagraphs (A) and (B) of paragraph (1), each appointing authority shall seek to include an appropriate balance of appointees from among the groups of appointees described in subparagraphs (A), (B), and (C) of paragraph (2).

(c) CHAIRPERSON.—The Secretary of Labor shall serve as the Chairperson of the Commission.

(d) TERM OF OFFICE.—Members shall be appointed for the life of the Commission.

(e) VACANCIES.—Any vacancy occurring in the membership of the Commission shall be filled in the same manner as the original appointment for the position being vacated. The vacancy shall not affect the power of the remaining members to execute the duties of the Commission.

(f) MEETINGS.—

(1) MEETINGS PRIOR TO COMPLETION OF REPORT.—The Commission shall meet not fewer than five times in connection with and pending the completion of the report described in section 204(b). The Commission shall hold additional meetings if the Chairperson or a majority of the members of the Commission request the additional meetings in writing.

(2) MEETINGS AFTER COMPLETION OF REPORT.—The Commission shall meet once each year after the completion of the report described in section 204(b). The Commission shall hold additional meetings if the Chairperson or a majority of the members of the Commission request the additional meetings in writing.

(g) QUORUM.—A majority of the Commission shall constitute a quorum for the transaction of business.

(h) COMPENSATION AND EXPENSES.—

(1) COMPENSATION.—Each member of the Commission who is not an employee of the Federal Government shall receive compensation at the daily equivalent of the rate specified for level V of the Executive Schedule under section 5316 of title 5, United States Code, for each day the member is engaged in the performance of duties for the Commission, including attendance at meetings and conferences of the Commission, and travel to conduct the duties of the Commission.

(2) TRAVEL EXPENSES.—Each member of the Commission shall receive travel expenses, including per diem in lieu of subsistence, at rates authorized for employees of agencies under subchapter I of chapter 57 of title 5, United States Code, for each

105 STAT. 1083

U.S. MERIT SYSTEMS PROTECTION BOARD

day the member is engaged in the performance of duties away from the home or regular place of business of the member.

(3) EMPLOYMENT STATUS.—A member of the Commission, who is not otherwise an employee of the Federal Government, shall not be deemed to be an employee of the Federal Government except for the purposes of—

(A) the tort claims provisions of chapter 171 of title 28, United States Code; and

(B) subchapter I of chapter 81 of title 5, United States Code, relating to compensation for work injuries.

42 USC 2000e note.

SEC. 204. RESEARCH ON ADVANCEMENT OF WOMEN AND MINORITIES TO MANAGEMENT AND DECISIONMAKING POSITIONS IN BUSINESS.

(a) ADVANCEMENT STUDY.—The Commission shall conduct a study of opportunities for, and artificial barriers to, the advancement of women and minorities to management and decisionmaking positions in business. In conducting the study, the Commission shall—

(1) examine the preparedness of women and minorities to advance to management and decisionmaking positions in business;

(2) examine the opportunities for women and minorities to advance to management and decisionmaking positions in business;

(3) conduct basic research into the practices, policies, and manner in which management and decisionmaking positions in business are filled;

(4) conduct comparative research of businesses and industries in which women and minorities are promoted to management and decisionmaking positions, and businesses and industries in which women and minorities are not promoted to management and decisionmaking positions;

(5) compile a synthesis of available research on programs and practices that have successfully led to the advancement of women and minorities to management and decisionmaking positions in business, including training programs, rotational assignments, developmental programs, reward programs, employee benefit structures, and family leave policies; and

(6) examine any other issues and information relating to the advancement of women and minorities to management and decisionmaking positions in business.

(b) REPORT.—Not later than 15 months after the date of the enactment of this Act, the Commission shall prepare and submit to the President and the appropriate committees of Congress a written report containing—

(1) the findings and conclusions of the Commission resulting from the study conducted under subsection (a); and

(2) recommendations based on the findings and conclusions described in paragraph (1) relating to the promotion of opportunities for, and elimination of artificial barriers to, the advancement of women and minorities to management and decisionmaking positions in business, including recommendations for—

(A) policies and practices to fill vacancies at the management and decisionmaking levels;

(B) developmental practices and procedures to ensure that women and minorities have access to opportunities to

gain the exposure, skills, and expertise necessary to assume management and decisionmaking positions;

(C) compensation programs and reward structures utilized to reward and retain key employees; and

(D) the use of enforcement (including such enforcement techniques as litigation, complaint investigations, compliance reviews, conciliation, administrative regulations, policy guidance, technical assistance, training, and public education) of Federal equal employment opportunity laws by Federal agencies as a means of eliminating artificial barriers to the advancement of women and minorities in employment.

(c) ADDITIONAL STUDY.—The Commission may conduct such additional study of the advancement of women and minorities to management and decisionmaking positions in business as a majority of the members of the Commission determines to be necessary.

SEC. 205. ESTABLISHMENT OF THE NATIONAL AWARD FOR DIVERSITY AND EXCELLENCE IN AMERICAN EXECUTIVE MANAGEMENT.          42 USC 2000e note.

(a) IN GENERAL.—There is established the National Award for Diversity and Excellence in American Executive Management, which shall be evidenced by a medal bearing the inscription "Frances Perkins-Elizabeth Hanford Dole National Award for Diversity and Excellence in American Executive Management". The medal shall be of such design and materials, and bear such additional inscriptions, as the Commission may prescribe.

(b) CRITERIA FOR QUALIFICATION.—To qualify to receive an award under this section a business shall—

(1) submit a written application to the Commission, at such time, in such manner, and containing such information as the Commission may require, including at a minimum information that demonstrates that the business has made substantial effort to promote the opportunities and developmental experiences of women and minorities to foster advancement to management and decisionmaking positions within the business, including the elimination of artificial barriers to the advancement of women and minorities, and deserves special recognition as a consequence; and

(2) meet such additional requirements and specifications as the Commission determines to be appropriate.

(c) MAKING AND PRESENTATION OF AWARD.—

(1) AWARD.—After receiving recommendations from the Commission, the President or the designated representative of the President shall annually present the award described in subsection (a) to businesses that meet the qualifications described in subsection (b).          President.

(2) PRESENTATION.—The President or the designated representative of the President shall present the award with such ceremonies as the President or the designated representative of the President may determine to be appropriate.          President.

(3) PUBLICITY.—A business that receives an award under this section may publicize the receipt of the award and use the award in its advertising, if the business agrees to help other United States businesses improve with respect to the promotion of opportunities and developmental experiences of women and minorities to foster the advancement of women and minorities to management and decisionmaking positions.

(d) Business.—For the purposes of this section, the term "business" includes—

  (1)(A) a corporation including nonprofit corporations;
  (B) a partnership;
  (C) a professional association;
  (D) a labor organization; and
  (E) a business entity similar to an entity described in subparagraphs (A) through (D);
  (2) an education referral program, a training program, such as an apprenticeship or management training program or a similar program; and
  (3) a joint program formed by a combination of any entities described in paragraph (1) or (2).

**42 USC 2000e note.**

**SEC. 206. POWERS OF THE COMMISSION.**

(a) In General.—The Commission is authorized to—
  (1) hold such hearings and sit and act at such times;
  (2) take such testimony;
  (3) have such printing and binding done;
  (4) enter into such contracts and other arrangements;
  (5) make such expenditures; and
  (6) take such other actions;
as the Commission may determine to be necessary to carry out the duties of the Commission.

(b) Oaths.—Any member of the Commission may administer oaths or affirmations to witnesses appearing before the Commission.

(c) Obtaining Information from Federal Agencies.—The Commission may secure directly from any Federal agency such information as the Commission may require to carry out its duties.

(d) Voluntary Service.—Notwithstanding section 1342 of title 31, United States Code, the Chairperson of the Commission may accept for the Commission voluntary services provided by a member of the Commission.

(e) Gifts and Donations.—The Commission may accept, use, and dispose of gifts or donations of property in order to carry out the duties of the Commission.

(f) Use of Mail.—The Commission may use the United States mails in the same manner and under the same conditions as Federal agencies.

**42 USC 2000e note.**

**SEC. 207. CONFIDENTIALITY OF INFORMATION.**

(a) Individual Business Information.—
  (1) In general.—Except as provided in paragraph (2), and notwithstanding section 552 of title 5, United States Code, in carrying out the duties of the Commission, including the duties described in sections 204 and 205, the Commission shall maintain the confidentiality of all information that concerns—
    (A) the employment practices and procedures of individual businesses; or
    (B) individual employees of the businesses.
  (2) Consent.—The content of any information described in paragraph (1) may be disclosed with the prior written consent of the business or employee, as the case may be, with respect to which the information is maintained.

(b) Aggregate Information.—In carrying out the duties of the Commission, the Commission may disclose—

  (1) informa
procedures of
  (2) informa
ees of the bu:
the employee

**SEC. 208. STAFF AN**

(a) Staff.—
  (1) Appoint
appoint and
Commission (
of the Commi
  (2) Limitat
member shall
fied for level
title 5, Unite
engaged in th
Commission
pensation of
United State
tive service, a
of chapter 5:
classification

(b) Experts and
sion may obtain st
and consultants
accordance with s
Commission deter
the Commission.

(c) Detail of F
person of the Co
detail, without rei
the Commission t
Any detail shall
status or privilege

(d) Technical A
the Commission,
technical assistan
mines to be necess

**SEC. 209. AUTHORI:**

There are auth
sums as may be
The sums shall re
limitation.

**SEC. 210. TERMINA'**

(a) Commission.
visory Committee
nate 4 years after

(b) Award.—Th
shall terminate 4

(1) information about the aggregate employment practices or procedures of a class or group of businesses; and

(2) information about the aggregate characteristics of employees of the businesses, and related aggregate information about the employees.

### SEC. 208. STAFF AND CONSULTANTS.

42 USC 2000e note.

(a) STAFF.—

(1) APPOINTMENT AND COMPENSATION.—The Commission may appoint and determine the compensation of such staff as the Commission determines to be necessary to carry out the duties of the Commission.

(2) LIMITATIONS.—The rate of compensation for each staff member shall not exceed the daily equivalent of the rate specified for level V of the Executive Schedule under section 5316 of title 5, United States Code for each day the staff member is engaged in the performance of duties for the Commission. The Commission may otherwise appoint and determine the compensation of staff without regard to the provisions of title 5, United States Code, that govern appointments in the competitive service, and the provisions of chapter 51 and subchapter III of chapter 53 of title 5, United States Code, that relate to classification and General Schedule pay rates.

(b) EXPERTS AND CONSULTANTS.—The Chairperson of the Commission may obtain such temporary and intermittent services of experts and consultants and compensate the experts and consultants in accordance with section 3109(b) of title 5, United States Code, as the Commission determines to be necessary to carry out the duties of the Commission.

(c) DETAIL OF FEDERAL EMPLOYEES.—On the request of the Chairperson of the Commission, the head of any Federal agency may detail, without reimbursement, any of the personnel of the agency to the Commission to assist the Commission in carrying out its duties. Any detail shall not interrupt or otherwise affect the civil service status or privileges of the Federal employee.

(d) TECHNICAL ASSISTANCE.—On the request of the Chairperson of the Commission, the head of a Federal agency shall provide such technical assistance to the Commission as the Commission determines to be necessary to carry out its duties.

### SEC. 209. AUTHORIZATION OF APPROPRIATIONS.

42 USC 2000e note.

There are authorized to be appropriated to the Commission such sums as may be necessary to carry out the provisions of this title. The sums shall remain available until expended, without fiscal year limitation.

### SEC. 210. TERMINATION.

42 USC 2000e note.

(a) COMMISSION.—Notwithstanding section 15 of the Federal Advisory Committee Act (5 U.S.C. App.), the Commission shall terminate 4 years after the date of the enactment of this Act.

(b) AWARD.—The authority to make awards under section 205 shall terminate 4 years after the date of the enactment of this Act.

P.L. 102–166
Sec. 301

Government
Employee Rights
Act of 1991.

LAWS OF 102nd CONG.—1st SESS.    Nov. 21

Nov. 21

# TITLE III—GOVERNMENT EMPLOYEE RIGHTS

2 USC 1201.

## SEC. 301. GOVERNMENT EMPLOYEE RIGHTS ACT OF 1991.

(a) SHORT TITLE.—This title may be cited as the "Government Employee Rights Act of 1991".

(b) PURPOSE.—The purpose of this title is to provide procedures to protect the right of Senate and other government employees, with respect to their public employment, to be free of discrimination on the basis of race, color, religion, sex, national origin, age, or disability.

(c) DEFINITIONS.—For purposes of this title:

(1) SENATE EMPLOYEE.—The term "Senate employee" or "employee" means—

(A) any employee whose pay is disbursed by the Secretary of the Senate;

(B) any employee of the Architect of the Capitol who is assigned to the Senate Restaurants or to the Superintendent of the Senate Office Buildings;

(C) any applicant for a position that will last 90 days or more and that is to be occupied by an individual described in subparagraph (A) or (B); or

(D) any individual who was formerly an employee described in subparagraph (A) or (B) and whose claim of a violation arises out of the individual's Senate employment.

(2) HEAD OF EMPLOYING OFFICE.—The term "head of employing office" means the individual who has final authority to appoint, hire, discharge, and set the terms, conditions or privileges of the Senate employment of an employee.

(3) VIOLATION.—The term "violation" means a practice that violates section 302 of this title.

2 USC 1202.

## SEC. 302. DISCRIMINATORY PRACTICES PROHIBITED.

All personnel actions affecting employees of the Senate shall be made free from any discrimination based on—

(1) race, color, religion, sex, or national origin, within the meaning of section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16);

(2) age, within the meaning of section 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a); or

(3) handicap or disability, within the meaning of section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791) and sections 102–104 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112–14).

2 USC 1203.

## SEC. 303. ESTABLISHMENT OF OFFICE OF SENATE FAIR EMPLOYMENT PRACTICES.

(a) IN GENERAL.—There is established, as an office of the Senate, the Office of Senate Fair Employment Practices (referred to in this title as the "Office"), which shall—

(1) administer the processes set forth in sections 305 through 307;

(2) implement programs for the Senate to heighten awareness of employee rights in order to prevent violations from occurring.

(b) DIRECTOR.—

(1) IN GENE[RAL.—]
(referred to in
pointed by the
tion of the Ma
Leader. The a
political affilia
the duties of th
term of servic
following the C
A Director ma
of service. Th
ommendation
Minority Leade

(2) SALARY.—
ommendation
Minority Leade
The salary of
employment of
time and in th
within the Sen
ity increases.

(3) ANNUAL
budget request
tions.

(4) APPOINT[
appointed and
enactment of
appointed and
of the session
nation of a Di
vacancy occurs

(c) STAFF OF THE [

(1) APPOINT[
compensation
cers, as are n

(2) DETAILEE
the Governme
Committee on
or nonreimbu
or agency, incl
General Accou

(3) CONSULT[
the Director m
or intermitten
tions thereof,
tions as a star
services under
Act of 1946 (2 [

(d) EXPENSES OF [
the Office shall be
from the appropri
fiscal year 1993, a
thorized to be app
as shall be necessa
shall be paid out
vouchers approved
be required for—

105 STAT. 1088

(1) IN GENERAL.—The Office shall be headed by a Director (referred to in this title as the "Director") who shall be appointed by the President pro tempore, upon the recommendation of the Majority Leader in consultation with the Minority Leader. The appointment shall be made without regard to political affiliation and solely on the basis of fitness to perform the duties of the position. The Director shall be appointed for a term of service which shall expire at the end of the Congress following the Congress during which the Director is appointed. A Director may be reappointed at the termination of any term of service. The President pro tempore, upon the joint recommendation of the Majority Leader in consultation with the Minority Leader, may remove the Director at any time.

(2) SALARY.—The President pro tempore, upon the recommendation of the Majority Leader in consultation with the Minority Leader, shall establish the rate of pay for the Director. The salary of the Director may not be reduced during the employment of the Director and shall be increased at the same time and in the same manner as fixed statutory salary rates within the Senate are adjusted as a result of annual comparability increases.

(3) ANNUAL BUDGET.—The Director shall submit an annual budget request for the Office to the Committee on Appropriations.

(4) APPOINTMENT OF DIRECTOR.—The first Director shall be appointed and begin service within 90 days after the date of enactment of this Act, and thereafter the Director shall be appointed and begin service within 30 days after the beginning of the session of the Congress immediately following the termination of a Director's term of service or within 60 days after a vacancy occurs in the position.

(c) STAFF OF THE OFFICE.—

(1) APPOINTMENT.—The Director may appoint and fix the compensation of such additional staff, including hearing officers, as are necessary to carry out the purposes of this title.

(2) DETAILEES.—The Director may, with the prior consent of the Government department or agency concerned and the Committee on Rules and Administration, use on a reimbursable or nonreimbursable basis the services of any such department or agency, including the services of members or personnel of the General Accounting Office Personnel Appeals Board.

(3) CONSULTANTS.—In carrying out the functions of the Office, the Director may procure the temporary (not to exceed 1 year) or intermittent services of individual consultants, or organizations thereof, in the same manner and under the same conditions as a standing committee of the Senate may procure such services under section 202(i) of the Legislative Reorganization Act of 1946 (2 U.S.C. 72a(i)).

(d) EXPENSES OF THE OFFICE.—In fiscal year 1992, the expenses of the Office shall be paid out of the Contingent Fund of the Senate from the appropriation account Miscellaneous Items. Beginning in fiscal year 1993, and for each fiscal year thereafter, there is authorized to be appropriated for the expenses of the Office such sums as shall be necessary to carry out its functions. In all cases, expenses shall be paid out of the Contingent Fund of the Senate upon vouchers approved by the Director, except that a voucher shall not be required for—

<span style="float:right">Appropriation<br>authorization.</span>

**LAWS OF 102nd CONG.—1st SESS.**   Nov. 21

(1) the disbursement of salaries of employees who are paid at an annual rate;

(2) the payment of expenses for telecommunications services provided by the Telecommunications Department, Sergeant at Arms, United States Senate;

(3) the payment of expenses for stationery supplies purchased through the Keeper of the Stationery, United States Senate;

(4) the payment of expenses for postage to the Postmaster, United States Senate; and

(5) the payment of metered charges on copying equipment provided by the Sergeant at Arms, United States Senate.

The Secretary of the Senate is authorized to advance such sums as may be necessary to defray the expenses incurred in carrying out this title. Expenses of the Office shall include authorized travel for personnel of the Office.

(e) RULES OF THE OFFICE.—The Director shall adopt rules governing the procedures of the Office, including the procedures of hearing boards, which rules shall be submitted to the President pro tempore for publication in the Congressional Record. The rules may be amended in the same manner. The Director may consult with the Chairman of the Administrative Conference of the United States on the adoption of rules.

(f) REPRESENTATION BY THE SENATE LEGAL COUNSEL.—For the purpose of representation by the Senate Legal Counsel, the Office shall be deemed a committee, within the meaning of title VII of the Ethics in Government Act of 1978 (2 U.S.C. 288, et seq.).

2 USC 1204.   **SEC. 304. SENATE PROCEDURE FOR CONSIDERATION OF ALLEGED VIOLATIONS.**

The Senate procedure for consideration of alleged violations consists of 4 steps as follows:

(1) Step I, counseling, as set forth in section 305.

(2) Step II, mediation, as set forth in section 306.

(3) Step III, formal complaint and hearing by a hearing board, as set forth in section 307.

(4) Step IV, review of a hearing board decision, as set forth in section 308 or 309.

2 USC 1205.   **SEC. 305. STEP I: COUNSELING.**

(a) IN GENERAL.—A Senate employee alleging a violation may request counseling by the Office. The Office shall provide the employee with all relevant information with respect to the rights of the employee. A request for counseling shall be made not later than 180 days after the alleged violation forming the basis of the request for counseling occurred. No request for counseling may be made until 10 days after the first Director begins service pursuant to section 303(b)(4).

(b) PERIOD OF COUNSELING.—The period for counseling shall be 30 days unless the employee and the Office agree to reduce the period. The period shall begin on the date the request for counseling is received.

(c) EMPLOYEES OF THE ARCHITECT OF THE CAPITOL AND CAPITOL POLICE.—In the case of an employee of the Architect of the Capitol or an employee who is a member of the Capitol Police, the Director may refer the employee to the Architect of the Capitol or the Capitol Police Board for resolution of the employee's complaint through the internal grievance procedures of the Architect of the Capitol or the

Nov. 21

Capitol Police B
count against th
this title.

**SEC. 306. STEP II: N**

(a) IN GENER
counseling perio
with the Office.
and the employ
parties separatel
between the emp

(b) MEDIATION
beginning on the
be extended for
The Office shall
office when the r

**SEC. 307. STEP III:**

(a) FORMAL C
than 30 days aft
of the end of th
formal complair
the employee h
completed the p

(b) HEARING I
(referred to in th
officers or empl
whom shall be
officer) shall be
section. The Dir
any candidates
Mediation and
of the United St
uals experience
hearing board s

(c) DISMISSAL
subsection (d), a
be frivolous.

(d) HEARING.—
(1) in clos
(2) no lat
subsection (
up to an ac
and
(3) excep
greatest ex
and proced
United Stat

(e) DISCOVER
mitted at the di

(f) SUBPOENA.
(1) AUTH
nas, which
behalf of tl
proceeding
correspond

Case 1:07-cv-01431-PLF     Document 6-2     Filed 12/11/2007     Page 35 of 44

Capitol Police Board for a specific period of time, which shall not count against the time available for counseling or mediation under this title.

**SEC. 306. STEP II: MEDIATION.**                              2 USC 1206.

(a) IN GENERAL.—Not later than 15 days after the end of the counseling period, the employee may file a request for mediation with the Office. Mediation may include the Office, the employee, and the employing office in a process involving meetings with the parties separately or jointly for the purpose of resolving the dispute between the employee and the employing office.

(b) MEDIATION PERIOD.—The mediation period shall be 30 days beginning on the date the request for mediation is received and may be extended for an additional 30 days at the discretion of the Office. The Office shall notify the employee and the head of the employing office when the mediation period has ended.

**SEC. 307. STEP III: FORMAL COMPLAINT AND HEARING.**         2 USC 1207.

(a) FORMAL COMPLAINT AND REQUEST FOR HEARING.—Not later than 30 days after receipt by the employee of notice from the Office of the end of the mediation period, the Senate employee may file a formal complaint with the Office. No complaint may be filed unless the employee has made a timely request for counseling and has completed the procedures set forth in sections 305 and 306.

(b) HEARING BOARD.—A board of 3 independent hearing officers (referred to in this title as "hearing board"), who are not Senators or officers or employees of the Senate, chosen by the Director (one of whom shall be designated by the Director as the presiding hearing officer) shall be assigned to consider each complaint filed under this section. The Director shall appoint hearing officers after considering any candidates who are recommended to the Director by the Federal Mediation and Conciliation Service, the Administrative Conference of the United States, or organizations composed primarily of individuals experienced in adjudicating or arbitrating personnel matters. A hearing board shall act by majority vote.

(c) DISMISSAL OF FRIVOLOUS CLAIMS.—Prior to a hearing under subsection (d), a hearing board may dismiss any claim that it finds to be frivolous.

(d) HEARING.—A hearing shall be conducted—

(1) in closed session on the record by a hearing board;

(2) no later than 30 days after filing of the complaint under subsection (a), except that the Office may, for good cause, extend up to an additional 60 days the time for conducting a hearing; and

(3) except as specifically provided in this title and to the greatest extent practicable, in accordance with the principles and procedures set forth in sections 554 through 557 of title 5, United States Code.

(e) DISCOVERY.—Reasonable prehearing discovery may be permitted at the discretion of the hearing board.

(f) SUBPOENA.—

(1) AUTHORIZATION.—A hearing board may authorize subpoenas, which shall be issued by the presiding hearing officer on behalf of the hearing board, for the attendance of witnesses at proceedings of the hearing board and for the production of correspondence, books, papers, documents, and other records.

(2) OBJECTIONS.—If a witness refuses, on the basis of relevance, privilege, or other objection, to testify in response to a question or to produce records in connection with the proceedings of a hearing board, the hearing board shall rule on the objection. At the request of the witness, the employee, the employing office, or on its own initiative, the hearing board may refer the objection to the Select Committee on Ethics for a ruling.

(3) ENFORCEMENT.—The Select Committee on Ethics may make to the Senate any recommendations by report or resolution, including recommendations for criminal or civil enforcement by or on behalf of the Office, which the Select Committee on Ethics may consider appropriate with respect to—

(A) the failure or refusal of any person to appear in proceedings under this or to produce records in obedience to a subpoena or order of the hearing board; or

(B) the failure or refusal of any person to answer questions during his or her appearance as a witness in a proceeding under this section.

For purposes of section 1365 of title 28, United States Code, the Office shall be deemed to be a committee of the Senate.

(g) DECISION.—The hearing board shall issue a written decision as expeditiously as possible, but in no case more than 45 days after the conclusion of the hearing. The written decision shall be transmitted by the Office to the employee and the employing office. The decision shall state the issues raised by the complaint, describe the evidence in the record, and contain a determination as to whether a violation has occurred.

(h) REMEDIES.—If the hearing board determines that a violation has occurred, it shall order such remedies as would be appropriate if awarded under section 706 (g) and (k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5 (g) and (k)), and may also order the award of such compensatory damages as would be appropriate if awarded under section 1977 and section 1977A (a) and (b)(2) of the Revised Statutes (42 U.S.C. 1981 and 1981A (a) and (b)(2)). In the case of a determination that a violation based on age has occurred, the hearing board shall order such remedies as would be appropriate if awarded under section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)). Any order requiring the payment of money must be approved by a Senate resolution reported by the Committee on Rules and Administration. The hearing board shall have no authority to award punitive damages.

(i) PRECEDENT AND INTERPRETATIONS.—Hearing boards shall be guided by judicial decisions under statutes referred to in section 302 and subsection (h) of this section, as well as the precedents developed by the Select Committee on Ethics under section 308, and other Senate precedents.

2 USC 1208.

### SEC. 308. REVIEW BY THE SELECT COMMITTEE ON ETHICS.

(a) IN GENERAL.—An employee or the head of an employing office may request that the Select Committee on Ethics (referred to in this section as the "Committee"), or such other entity as the Senate may designate, review a decision under section 307, including any decision following a remand under subsection (c), by filing a request for review with the Office not later than 10 days after the receipt of the decision of a hearing board. The Office, at the discretion of the Director, on its own initiative and for good cause, may file a request

for review by the Comm
later than 5 days after t
to file a request for rev
copy of any request fo
interested parties of the

(b) REVIEW.—Review
record of the hearing b
in the Congressional
under this section.

(c) REMAND.—Within
the Committee may rem
hearing board for the
further consideration.

(d) FINAL DECISION.—

(1) HEARING BOA
under subsection (
the decision of the

(2) SELECT COMM

(A) If the C
(c), it shall tra
entry in the
transmit the
during which
request for re
may extend fo
in session the
decision.

(B) The deci
be a final deci
as a final deci
to reverse or
within the tir
decision.

(C) The deci
be a final dec
as a final de
decides not t
under subsect
notifies the in

(3) ENTRY OF A
in the records of
purposes of judici

(e) STATEMENT OF RI
subsection (c) or subs
ment of the reasons fo

### SEC. 309. JUDICIAL REVI

(a) IN GENERAL.—A
sion under section 30
be required to reimbu
to the section entitle
the Senate" and a
308(d)(2)(B), may pet
Appeals for the Feder

(b) LAW APPLICABL
shall apply to a revie

for review by the Committee of a decision of a hearing board not later than 5 days after the time for the employee or employing office to file a request for review has expired. The Office shall transmit a copy of any request for review to the Committee and notify the interested parties of the filing of the request for review.

(b) REVIEW.—Review under this section shall be based on the record of the hearing board. The Committee shall adopt and publish in the Congressional Record procedures for requests for review under this section.

(c) REMAND.—Within the time for a decision under subsection (d), the Committee may remand a decision no more than one time to the hearing board for the purpose of supplementing the record or for further consideration.

(d) FINAL DECISION.—

(1) HEARING BOARD.—If no timely request for review is filed under subsection (a), the Office shall enter as a final decision, the decision of the hearing board.

(2) SELECT COMMITTEE ON ETHICS.—                           Records.

(A) If the Committee does not remand under subsection (c), it shall transmit a written final decision to the Office for entry in the records of the Office. The Committee shall transmit the decision not later than 60 calendar days during which the Senate is in session after the filing of a request for review under subsection (a). The Committee may extend for 15 calendar days during which the Senate is in session the period for transmission to the Office of a final decision.

(B) The decision of the hearing board shall be deemed to be a final decision, and entered in the records of the Office as a final decision, unless a majority of the Committee votes to reverse or remand the decision of the hearing board within the time for transmission to the Office of a final decision.

(C) The decision of the hearing board shall be deemed to be a final decision, and entered in the records of the Office as a final decision, if the Committee, in its discretion, decides not to review, pursuant to a request for review under subsection (a), a decision of the hearing board, and notifies the interested parties of such decision.

(3) ENTRY OF A FINAL DECISION.—The entry of a final decision in the records of the Office shall constitute a final decision for purposes of judicial review under section 309.

(e) STATEMENT OF REASONS.—Any decision of the Committee under subsection (c) or subsection (d)(2)(A) shall contain a written statement of the reasons for the Committee's decision.

## SEC. 309. JUDICIAL REVIEW.                               2 USC 1209.

(a) IN GENERAL.—Any Senate employee aggrieved by a final decision under section 308(d), or any Member of the Senate who would be required to reimburse the appropriate Federal account pursuant to the section entitled "Payments by the President or a Member of the Senate" and a final decision entered pursuant to section 308(d)(2)(B), may petition for review by the United States Court of Appeals for the Federal Circuit.

(b) LAW APPLICABLE.—Chapter 158 of title 28, United States Code, shall apply to a review under this section except that—

(1) with respect to section 2344 of title 28, United States Code, service of the petition shall be on the Senate Legal Counsel rather than on the Attorney General;

(2) the provisions of section 2348 of title 28, United States Code, on the authority of the Attorney General, shall not apply;

(3) the petition for review shall be filed not later than 90 days after the entry in the Office of a final decision under section 308(d);

(4) the Office shall be an "agency" as that term is used in chapter 158 of title 28, United States Code; and

(5) the Office shall be the respondent in any proceeding under this section.

(c) STANDARD OF REVIEW.—To the extent necessary to decision and when presented, the court shall decide all relevant questions of law and interpret constitutional and statutory provisions. The court shall set aside a final decision if it is determined that the decision was—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law;

(2) not made consistent with required procedures; or

(3) unsupported by substantial evidence.

In making the foregoing determinations, the court shall review the whole record, or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error. The record on review shall include the record before the hearing board, the decision of the hearing board, and the decision, if any, of the Select Committee on Ethics.

(d) ATTORNEY'S FEES.—If an employee is the prevailing party in a proceeding under this section, attorney's fees may be allowed by the court in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(k)).

2 USC 1210.

**SEC. 310. RESOLUTION OF COMPLAINT.**

If, after a formal complaint is filed under section 307, the employee and the head of the employing office resolve the issues involved, the employee may dismiss the complaint or the parties may enter into a written agreement, subject to the approval of the Director.

2 USC 1211.

**SEC. 311. COSTS OF ATTENDING HEARINGS.**

Subject to the approval of the Director, an employee with respect to whom a hearing is held under this title may be reimbursed for actual and reasonable costs of attending proceedings under sections 307 and 308, consistent with Senate travel regulations. Senate Resolution 259, agreed to August 5, 1987 (100th Congress, 1st Session), shall apply to witnesses appearing in proceedings before a hearing board.

2 USC 1212.

**SEC. 312. PROHIBITION OF INTIMIDATION.**

Any intimidation of, or reprisal against, any employee by any Member, officer, or employee of the Senate, or by the Architect of the Capitol, or anyone employed by the Architect of the Capitol, as the case may be, because of the exercise of a right under this title constitutes an unlawful employment practice, which may be remedied in the same manner under this title as is a violation.

**SEC. 313. CONFIDENTIAL**

(a) COUNSELING.—A except that the Office head of the employing

(b) MEDIATION.—All

(c) HEARINGS.—Exc deliberations, and de Committee on Ethics s

(d) FINAL DECISION decision of the Select be made public if the employee or if the de which had been in fa Ethics may decide to the absence of a pr hearing board that public.

(e) RELEASE OF REC decisions of hearing l tee on Ethics, may l judicial review under

**SEC. 314. EXERCISE OF**

The provisions of 322, are enacted by power of the Senate, to change its rules, i in the case of any other provision of l ment and adjudicati prohibited by sectic shall be within th Senate.

**SEC. 315. TECHNICAL**

Section 509 of th U.S.C. 12209) is ame

(1) in subsect

(A) by st

(B) by re

(2) and (3),

(C) in pa of this par

(i) b as red and

(ii) insert

(2) in subsec who are defin Civil Rights A

**SEC. 316. POLITICAL**

(a) IN GENERAL employee describe

(1) party af

(2) domicile

Case 1:07-cv-01431-PLF    Document 6-2    Filed 12/11/2007    Page 39 of 44

### SEC. 313. CONFIDENTIALITY.

(a) COUNSELING.—All counseling shall be strictly confidential except that the Office and the employee may agree to notify the head of the employing office of the allegations.

(b) MEDIATION.—All mediation shall be strictly confidential.

(c) HEARINGS.—Except as provided in subsection (d), the hearings, deliberations, and decisions of the hearing board and the Select Committee on Ethics shall be confidential.

(d) FINAL DECISION OF SELECT COMMITTEE ON ETHICS.—The final decision of the Select Committee on Ethics under section 308 shall be made public if the decision is in favor of the complaining Senate employee or if the decision reverses a decision of the hearing board which had been in favor of the employee. The Select Committee on Ethics may decide to release any other decision at its discretion. In the absence of a proceeding under section 308, a decision of the hearing board that is favorable to the employee shall be made public.

(e) RELEASE OF RECORDS FOR JUDICIAL REVIEW.—The records and decisions of hearing boards, and the decisions of the Select Committee on Ethics, may be made public if required for the purpose of judicial review under section 309.

### SEC. 314. EXERCISE OF RULEMAKING POWER.

2 USC 1214.

The provisions of this title, except for sections 309, 320, 321, and 322, are enacted by the Senate as an exercise of the rulemaking power of the Senate, with full recognition of the right of the Senate to change its rules, in the same manner, and to the same extent, as in the case of any other rule of the Senate. Notwithstanding any other provision of law, except as provided in section 309, enforcement and adjudication with respect to the discriminatory practices prohibited by section 302, and arising out of Senate employment, shall be within the exclusive jurisdiction of the United States Senate.

### SEC. 315. TECHNICAL AND CONFORMING AMENDMENTS.

Section 509 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12209) is amended—

    (1) in subsection (a)—
        (A) by striking paragraphs (2) through (5);
        (B) by redesignating paragraphs (6) and (7) as paragraphs (2) and (3), respectively; and
        (C) in paragraph (3), as redesignated by subparagraph (B) of this paragraph—
            (i) by striking "(2) and (6)(A)" and inserting "(2)(A)", as redesignated by subparagraph (B) of this paragraph; and
            (ii) by striking "(3), (4), (5), (6)(B), and (6)(C)" and inserting "(2)"; and
    (2) in subsection (c)(2), by inserting ", except for the employees who are defined as Senate employees, in section 301(c)(1) of the Civil Rights Act of 1991" after "shall apply exclusively".

### SEC. 316. POLITICAL AFFILIATION AND PLACE OF RESIDENCE.

2 USC 1215.

(a) IN GENERAL.—It shall not be a violation with respect to an employee described in subsection (b) to consider the—

    (1) party affiliation;
    (2) domicile; or

(3) political compatibility with the employing office, of such an employee with respect to employment decisions.

(b) DEFINITION.—For purposes of this section, the term "employee" means—

(1) an employee on the staff of the Senate leadership;

(2) an employee on the staff of a committee or subcommittee;

(3) an employee on the staff of a Member of the Senate;

(4) an officer or employee of the Senate elected by the Senate or appointed by a Member, other than those described in paragraphs (1) through (3); or

(5) an applicant for a position that is to be occupied by an individual described in paragraphs (1) through (4).

2 USC 1216. **SEC. 317. OTHER REVIEW.**

No Senate employee may commence a judicial proceeding to redress discriminatory practices prohibited under section 302 of this title, except as provided in this title.

2 USC 1217. **SEC. 318. OTHER INSTRUMENTALITIES OF THE CONGRESS.**

It is the sense of the Senate that legislation should be enacted to provide the same or comparable rights and remedies as are provided under this title to employees of instrumentalities of the Congress not provided with such rights and remedies.

2 USC 1218. **SEC. 319. RULE XLII OF THE STANDING RULES OF THE SENATE.**

(a) REAFFIRMATION.—The Senate reaffirms its commitment to Rule XLII of the Standing Rules of the Senate, which provides as follows:

"No Member, officer, or employee of the Senate shall, with respect to employment by the Senate or any office thereof—

"(a) fail or refuse to hire an individual;

"(b) discharge an individual; or

"(c) otherwise discriminate against an individual with respect to promotion, compensation, or terms, conditions, or privileges of employment

on the basis of such individual's race, color, religion, sex, national origin, age, or state of physical handicap.".

(b) AUTHORITY TO DISCIPLINE.—Notwithstanding any provision of this title, including any provision authorizing orders for remedies to Senate employees to redress employment discrimination, the Select Committee on Ethics shall retain full power, in accordance with its authority under Senate Resolution 338, 88th Congress, as amended, with respect to disciplinary action against a Member, officer, or employee of the Senate for a violation of Rule XLII.

2 USC 1219. **SEC. 320. COVERAGE OF PRESIDENTIAL APPOINTEES.**

(a) IN GENERAL.—

(1) APPLICATION.—The rights, protections, and remedies provided pursuant to section 302 and 307(h) of this title shall apply with respect to employment of Presidential appointees.

(2) ENFORCEMENT BY ADMINISTRATIVE ACTION.—Any Presidential appointee may file a complaint alleging a violation, not later than 180 days after the occurrence of the alleged violation, with the Equal Employment Opportunity Commission, or such other entity as is designated by the President by Executive Order, which, in accordance with the principles and procedures set forth in sections 554 through 557 of title 5, United States

Code, shall
shall set for
Employment
is designated
mines that
provide for a

(3) JUDICIA

(A) IN
under p
States C

(B) L
States
except
sion or
under
used in

(C) S
decisio
decide
tional
final o
order v

ot

In ma
review
and d
error.

(D)
preva
ney's
the st
Right

(b) PRESIDE
term "Preside
applicant seek
the Executive
dent, whether
ing authority
bring an actic
but does not i

(1) who
consent o

(2) who
section 3
App.); or

(3) who

**SEC. 321. COVE**

(a) APPLIC
pursuant to
respect to en
person electe
any State by

(1) to

Code, shall determine whether a violation has occurred and shall set forth its determination in a final order. If the Equal Employment Opportunity Commission, or such other entity as is designated by the President pursuant to this section, determines that a violation has occurred, the final order shall also provide for appropriate relief.

(3) JUDICIAL REVIEW.—

(A) IN GENERAL.—Any party aggrieved by a final order under paragraph (2) may petition for review by the United States Court of Appeals for the Federal Circuit.

(B) LAW APPLICABLE.—Chapter 158 of title 28, United States Code, shall apply to a review under this section except that the Equal Employment Opportunity Commission or such other entity as the President may designate under paragraph (2) shall be an "agency" as that term is used in chapter 158 of title 28, United States Code.

(C) STANDARD OF REVIEW.—To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law and interpret constitutional and statutory provisions. The court shall set aside a final order under paragraph (2) if it is determined that the order was—

(i) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law;

(ii) not made consistent with required procedures; or

(iii) unsupported by substantial evidence.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

(D) ATTORNEY'S FEES.—If the presidential appointee is the prevailing party in a proceeding under this section, attorney's fees may be allowed by the court in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(k)).

(b) PRESIDENTIAL APPOINTEE.—For purposes of this section, the term "Presidential appointee" means any officer or employee, or an applicant seeking to become an officer or employee, in any unit of the Executive Branch, including the Executive Office of the President, whether appointed by the President or by any other appointing authority in the Executive Branch, who is not already entitled to bring an action under any of the statutes referred to in section 302 but does not include any individual—

(1) whose appointment is made by and with the advice and consent of the Senate;

(2) who is appointed to an advisory committee, as defined in section 3(2) of the Federal Advisory Committee Act (5 U.S.C. App.); or

(3) who is a member of the uniformed services.

**SEC. 321. COVERAGE OF PREVIOUSLY EXEMPT STATE EMPLOYEES.**                    2 USC 1220.

(a) APPLICATION.—The rights, protections, and remedies provided pursuant to section 302 and 307(h) of this title shall apply with respect to employment of any individual chosen or appointed, by a person elected to public office in any State or political subdivision of any State by the qualified voters thereof—

(1) to be a member of the elected official's personal staff;

(2) to serve the elected official on the policymaking level; or

(3) to serve the elected official as an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

(b) ENFORCEMENT BY ADMINISTRATIVE ACTION.—

(1) IN GENERAL.—Any individual referred to in subsection (a) may file a complaint alleging a violation, not later than 180 days after the occurrence of the alleged violation, with the Equal Employment Opportunity Commission, which, in accordance with the principles and procedures set forth in sections 554 through 557 of title 5, United States Code, shall determine whether a violation has occurred and shall set forth its determination in a final order. If the Equal Employment Opportunity Commission determines that a violation has occurred, the final order shall also provide for appropriate relief.

(2) REFERRAL TO STATE AND LOCAL AUTHORITIES.—

(A) APPLICATION.—Section 706(d) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(d)) shall apply with respect to any proceeding under this section.

(B) DEFINITION.—For purposes of the application described in subparagraph (A), the term "any charge filed by a member of the Commission alleging an unlawful employment practice" means a complaint filed under this section.

(c) JUDICIAL REVIEW.—Any party aggrieved by a final order under subsection (b) may obtain a review of such order under chapter 158 of title 28, United States Code. For the purpose of this review, the Equal Employment Opportunity Commission shall be an "agency" as that term is used in chapter 158 of title 28, United States Code.

(d) STANDARD OF REVIEW.—To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law and interpret constitutional and statutory provisions. The court shall set aside a final order under subsection (b) if it is determined that the order was—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law;

(2) not made consistent with required procedures; or

(3) unsupported by substantial evidence.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

(e) ATTORNEY'S FEES.—If the individual referred to in subsection (a) is the prevailing party in a proceeding under this subsection, attorney's fees may be allowed by the court in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(k)).

2 USC 1221.

**SEC. 322. SEVERABILITY.**

Notwithstanding section 401 of this Act, if any provision of section 309 or 320(a)(3) is invalidated, both sections 309 and 320(a)(3) shall have no force and effect.

2 USC 1222.

**SEC. 323. PAYMENTS BY THE PRESIDENT OR A MEMBER OF THE SENATE.**

The President or a Member of the Senate shall reimburse the appropriate Federal account for any payment made on his or her behalf out of such account for a violation committed under the provisions of this title by the President or Member of the Senate not later than 60 days after the payment is made.

Nov. 21        CIVIL RIGHTS ACT OF 1991

P.L. 102-166
Sec. 402
2 USC 1223.

**SEC. 324. REPORTS OF SENATE COMMITTEES.**

(a) Each report accompanying a bill or joint resolution of a public character reported by any committee of the Senate (except the Committee on Appropriations and the Committee on the Budget) shall contain a listing of the provisions of the bill or joint resolution that apply to Congress and an evaluation of the impact of such provisions on Congress.

(b) The provisions of this section are enacted by the Senate as an exercise of the rulemaking power of the Senate, with full recognition of the right of the Senate to change its rules, in the same manner, and to the same extent, as in the case of any other rule of the Senate.

**SEC. 325. INTERVENTION AND EXPEDITED REVIEW OF CERTAIN APPEALS.**    2 USC 1224.

(a) INTERVENTION.—Because of the constitutional issues that may be raised by section 309 and section 320, any Member of the Senate may intervene as a matter of right in any proceeding under section 309 for the sole purpose of determining the constitutionality of such section.

(b) THRESHOLD MATTER.—In any proceeding under section 309 or section 320, the United States Court of Appeals for the Federal Circuit shall determine any issue presented concerning the constitutionality of such section as a threshold matter.

(c) APPEAL.—

(1) IN GENERAL.—An appeal may be taken directly to the Supreme Court of the United States from any interlocutory or final judgment, decree, or order issued by the United States Court of Appeals for the Federal Circuit ruling upon the constitutionality of section 309 or 320.

(2) JURISDICTION.—The Supreme Court shall, if it has not previously ruled on the question, accept jurisdiction over the appeal referred to in paragraph (1), advance the appeal on the docket and expedite the appeal to the greatest extent possible.

# TITLE IV—GENERAL PROVISIONS

**SEC. 401. SEVERABILITY.**

42 USC 1981 note.

If any provision of this Act, or an amendment made by this Act, or the application of such provision to any person or circumstances is held to be invalid, the remainder of this Act and the amendments made by this Act, and the application of such provision to other persons and circumstances, shall not be affected.

**SEC. 402. EFFECTIVE DATE.**

42 USC 1981 note.

(a) IN GENERAL.—Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.

(b) CERTAIN DISPARATE IMPACT CASES.—Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

# TITLE V—CIVIL WAR SITES ADVISORY COMMISSION

**SEC. 501. CIVIL WAR SITES ADVISORY COMMISSION.**

16 USC 1a-5
note.

Section 1205 of Public Law 101–628 is amended in subsection (a) by—

(1) striking "Three" in paragraph (4) and inserting "Four" in lieu thereof; and

(2) striking "Three" in paragraph (5) and inserting "Four" in lieu thereof.

Approved November 21, 1991.

---

PUBLIC L

UNITED ST
RE

An Act to extend the U

*Be it enacted b*
*United States of A*

SECTION 1. SHORT

This Act may b
Rights Reauthori

SEC. 2. ANNUAL RE

Section 5 of th
1983 (42 U.S.C. 19
"The Commission
section, submit a
civil rights enfor
to the President.

SEC. 3. REAUTHOR

Section 7 of th
1983 (42 U.S.C. 1

"SEC. 7. AUTHORIZ

"There are au
$7,159,000 for fis
year 1992 to relo

SEC. 4. TERMINAT

Section 8 of t
1983 (42 U.S.C.
"1994".

SEC. 5. COMMISSI

Section 2(c), s
of the United
U.S.C. 1975(c),
striking "Chai
"Chairperson".

Approved No

---

LEGISLATIVE HISTORY—S. 1745:

CONGRESSIONAL RECORD, Vol. 137 (1991):
Oct. 25, 29, 30, considered and passed Senate.
Nov. 7, considered and passed House.

LEGISLATIVE H

CONGRESSIONA
Sept. 30, co
Oct. 28, con
Nov. 5, 6, F